UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

ROBERT C. FOLEY,                    )
                                    )
        Petitioner,                 )
                                    )
                                    )     No. 6:00-CV-552-DCR-REW
v.                                  )
                                    )     RECOMMENDED DISPOSITION
RANDY WHITE, Warden,                )
                                    )
        Respondent.                 )
                                    )

* * * * * * * * * *

Petitioner, Robert C. Foley, was convicted for the murders of brothers Harry Lynn

Vaughn and Rodney Vaughn in Laurel Circuit Court.   The court imposed two death

sentences on September 2, 1993.   *See Foley v. Commonwealth*, 942 S.W.2d 876, 879

(Ky. 1996).  Foley unsuccessfully pursued a direct appeal of his convictions, as well as a

Kentucky Criminal Rule 11.42 motion to vacate, set aside, or correct his sentence.   *See*

*id.*; *Foley v. Commonwealth*, 17 S.W.3d 878 (Ky. 2000)[1].   Foley then filed a Petition for

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court in June of 2001.   *See*

DE #30.   Following the conclusion of extensive briefing, Judge J.B. Johnson, Jr., the

magistrate judge assigned to the case, recommended denying each of Foley's thirty-plus

habeas claims.   *See* DE #63.   The District Judge adopted the recommendation, with one

---

[1] *Stopher v. Conliffe*, 170 S.W.3d 307, 310 (Ky. 2005), overruled *Foley* "to the extent that
it holds that an indigent person filing an RCr 11.42 motion is entitled to funds for expert
assistance upon a showing that such assistance is reasonably necessary."  In *Hodge v.
Coleman*, 244 S.W.3d 102, 108 (Ky. 2008), the Kentucky Supreme Court then overruled
*Stopher*  to the extent it held "that KRS 31.185 is never available as an avenue for
indigent post-conviction petitioners to obtain public funds[.]"  Neither *Stopher* nor *Hodge*
affects the Court's discussion and analysis of the Kentucky Supreme Court's review of
Foley's 11.42 motion.

1

exception on the Certificate of Appealability, and denied Foley § 2254 relief on May 24, 2004 (*see* DE #69). The District Judge also lifted the stay of execution entered during the pendency of habeas proceedings. *See id.*; DE #15.

Foley appealed the District Court's decision to the United States Court of Appeals for the Sixth Circuit. *See* DE #71. The Sixth Circuit affirmed the District Court's judgment, but stayed issuance of its Mandate to allow Foley to petition the Supreme Court for a writ of certiorari. *See* DE ##81, 82. The Supreme Court denied Foley's petition in June of 2008, and the Sixth Circuit issued its Mandate in July of the same year. *See* DE ##85, 86.

On June 7, 2012, Foley filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). DE #116 (Motion). Specifically, Foley's motion asks the Court to reopen habeas proceedings to consider the merits of certain claims he contends the Court previously deemed procedurally defaulted. *See id.* Foley bases his request on the Supreme Court's recent holding in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *See* DE #116. Respondent[2] filed a response in opposition to the motion, *see* DE #118, and Foley replied, *see* DE ##121, 122. The District Judge referred the matter to the undersigned for a recommended disposition. *See* DE #123. The motion is fully briefed and ripe for consideration. The Court **RECOMMENDS** that the District Court **DENY** Foley's Rule 60(b) motion. Although the Rule 60(b)(6) motion as phrased is not a

---

[2] Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a petitioner in habeas proceedings must name as respondent the state officer having custody over him. When Foley filed his habeas petition, he properly named Philip Parker, then the Warden of the Kentucky State Penitentiary where Foley was (and still is) housed, as Respondent. The Court takes judicial notice that Randy White is now the Warden of the Kentucky State Penitentiary and substitutes White as nominal Respondent in this action.

successive petition, Foley merits no relief.  *Martinez* slightly changes avenues for relief from procedural default, but the changes do not apply to Kentucky's model for litigating ineffective assistance of counsel claims.  Further, even if *Martinez* applied, Foley does not meet the demanding threshold for Rule 60(b)(6) relief.  Finally, Foley's underlying predicate argument, that ineffective assistance would excuse procedural default, here misperceives the record and lacks the requisite substantiality.

## I.  Foley's Rule 60(b) Motion Is Not a Successive Petition

As an initial matter, the Court addresses Respondent's argument that Foley's motion constitutes an inappropriate successive petition.  *See* DE #118 at 7.  Although Respondent cites *Gonzalez v. Crosby*, 125 S. Ct. 2641 (2005), in support of the argument, *Gonzalez* compels the opposite conclusion.

In *Gonzalez*, the Supreme Court held that a Rule 60(b) motion should be treated as a second or successive habeas corpus application only when it advances one or more "claims."  *See id.* at 2646-48.  The Court explained that a motion can "be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief."  *Id.* at 2648 (emphasis in original).  The Court then specifically noted that a movant is *not* making a habeas corpus claim "when he merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar."  *Id.* at 2648 n. 4.

Here, Foley purports to challenge the Court's previous determination that he procedurally defaulted certain claims. This is a procedural inquiry into an alleged procedural basis for the prior rulings, and is not a successive § 2254 application. Accordingly, Foley does not assert a "claim" for habeas relief as defined in *Gonzalez*, and he brings his motion properly under Rule 60(b).[3] *See also Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012) (treating *Martinez* argument as outside the successiveness bar).

## II.  Rule 60(b) Relief Is Not Justified

Rule 60(b) provides that a court

may relieve a party . . . from a final judgment . . . for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

---

[3] The civil rules generally apply to § 2254 proceedings to the extent not inconsistent with the statutes and particular habeas rules. *See Gonzalez*, 125 S. Ct. at 2646; Rule 12, Rules Governing Section 2254 Cases.

Fed. R. Civ. P. 60(b)(1)-(6).  Subparts (1)-(5) do not apply, and Foley makes his motion under subsection (b)(6), on the ground that *Martinez* constitutes an "other reason" justifying relief.[4]  *See* DE #116 (Motion) at 17.

The Sixth Circuit has held that "relief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'"  *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)); *see also Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007).  The Sixth Circuit applies "[e]ven stricter standards . . . to motions under subsection (6) of Rule 60(b) than to motions made under other provisions of the rule."  *Stokes*, 475 F.3d at 735.  This is because "almost every conceivable ground for relief is covered" by subsections (1) through (5).  *Blue Diamond*, 249 F.3d at 524 (citation and internal quotation marks omitted).  Courts grant Rule 60(b)(6) relief "only in unusual and extreme situations where principles of equity *mandate* relief."  *Id.* (emphasis in original) (citation and internal quotation marks omitted).

Further, "[i]t is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief."  *Id.*; *see also Stokes*, 475 F.3d at 736.  Instead, to grant relief from judgment under Rule 60(b)(6), "courts have relied on an applicable change in decisional law, coupled with some other special circumstance[.]"  *Blue Diamond*, 249 F.3d at 524.  Ultimately, however, "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court

---

[4] "A motion under Rule 60(b) must be made within a reasonable time[.]"  Fed. R. Civ. P. 60(c)(1).  Foley filed his motion less than three months after the Supreme Court issued its decision in *Martinez*.  The Commonwealth does not argue that this is unreasonable promptness.

5

to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* at 529 (citation and internal quotation marks omitted); *see also Stokes*, 475 F.3d at 736. *Gonzalez* counsels that 60(b)(6) relief is a rarity in habeas cases.[5] *Gonzalez*, 125 S. Ct. at 2649.

*Martinez* presents a change in decisional law regarding procedural default. Procedural default results "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim[.]" *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citations and internal quotation marks omitted). In order for procedural default to apply as a result of a state procedural rule, three elements must be satisfied: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Id.* (citation omitted). Thus, procedural default applies when a habeas petitioner fails to meet the state's procedural requirements for presenting his federal claims, thus depriving the state courts of the first opportunity to address the merits of those claims. *See Coleman v. Thompson*, 111 S. Ct. 2546, 2555 (1991).

In *Coleman*, the Supreme Court held that federal habeas review of a state prisoner's procedurally defaulted claims "is barred unless the prisoner can demonstrate

---

[5] Foley's conclusory justification under Rule 60(b)(6) is a) issuance of *Martinez* and b) the capital crime presented. *See* DE #116 (Motion) at 17-18.

cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"  *Id.* at 2565.  Then, significantly for the purposes of Foley's motion, the Court held that an attorney's ineffective assistance in a post-conviction proceeding does not constitute "cause" to excuse a procedural default.  *Id.* at 2566-67; *see also Martinez*, 132 S. Ct. at 1315.  The *Martinez* Court recognized a "narrow exception" to this rule. Specifically, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Martinez*, 132 S. Ct. at 1315.

The *Martinez* Court specifically defined "initial-review collateral proceedings," for purposes of its decision, as "collateral proceedings which provide the *first occasion* to raise a claim of ineffective assistance at trial."  *Id.* (emphasis added).  The Court reasoned that where "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim."  *Id.* at 1317.  Accordingly, "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim[,]" and, if counsel's errors "do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."  *Id.* at 1316.

The *Martinez* court stressed that its decision is an "equitable ruling," not a constitutional ruling.  *Id.* at 1319.  Specifically, the *Martinez* holding did not address the constitutional question, left open by *Coleman*, of "whether a prisoner has a *right* to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial."  *Id.* at 1315 (emphasis added).  After *Martinez*,

7

the ineffectiveness of post-conviction counsel remains an insufficient free-standing basis for federal habeas relief.  *See also* 28 U.S.C. § 2254(i).  Instead, the Court announced a "limited qualification" to *Coleman*'s general rule regarding ineffective assistance as cause for procedural default of ineffective-assistance-of-trial-counsel claims.  *See id.* at 1319.

### 1.      Martinez does not alter the rules for cases originating in Kentucky.

*Martinez* undoubtedly changes *Coleman*, but the Court must heed the Supreme Court's words in defining the scope of change.  The *Martinez* Court phrased its alteration of *Coleman* as driven by and limited to a claimant's **first opportunity** to raise an ineffective assistance of counsel claim.  The Court denominated this "first occasion" context as "initial-review collateral proceedings," avoided the weighty constitutional question, and held that in the particular scenario presented, inadequate assistance of counsel (or absence of counsel) in initial-review collateral proceedings may establish cause for procedural default of an ineffective-assistance-of-trial-counsel claim.  *Martinez*, 132 S. Ct. at 1315.

*Martinez* confronted an Arizona system that forbids a convicted defendant to raise an ineffective assistance claim on direct appeal.  *See id.* at 1314 ("Arizona instead requires claims of ineffective assistance at trial be reserved for state collateral proceedings.").  Thus, in Arizona, a collateral proceeding following direct appeal is "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial[.]"  *Id.* at 1317.  This was a critical part of the Court's reasoning.  Arizona "deliberately" chose to shunt ineffective assistance from the direct appeal context, "where counsel is constitutionally guaranteed."  *Id.* at 1318.  The choice "significantly

diminishes prisoners' ability to file such claims," *id.*, thus creating a context where ineffective assistance (or lack of counsel) in presentment "qualifies as cause for a procedural default." *Id.* The Court's motivating fear was the lost opportunity, via ineffective assistance and then procedural default, for **any** court to entertain a claim of trial counsel ineffectiveness. The first available proceeding becomes, in essence, "the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317.

 *Martinez* leaves little textual doubt that its change to *Coleman* impacts only a system like Arizona's, which bars direct appeal consideration of ineffective assistance:

> The rule of Coleman governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding *beyond the first occasion the State allows a prisoner* to raise a claim of ineffective assistance at trial[.]. . . .*Our holding here addresses only the constitutional claims presented in this case, where the State barred the defendant from raising the claims on direct appeal*.

*Id.* at 1320 (emphasis added); *id.* (citing that qualification on *Coleman* reflects "the importance of the right to the effective assistance of trial counsel **and Arizona's decision to bar defendants from raising ineffective-assistance claims on direct appeal**") (emphasis added); *id.* at 1318 ("[W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim [via lack of counsel or ineffective counsel].").

 Respondent correctly argues that Kentucky is distinct from Arizona. The Kentucky Supreme Court expressly permits a convicted defendant to raise ineffective-assistance-of-trial-counsel claims on direct appeal:

> Finally, we reject the Commonwealth's assertion that claims of ineffective assistance of counsel can be asserted only in a collateral attack via RCr 11.42.  To the contrary, nothing precludes raising the issue either in a motion for new trial or, as here, in a motion to set aside a plea[.]

*Rodriguez v. Commonwealth*, 87 S.W.3d 8, 11 (Ky. 2002).  Further,

> This is not to say, however, that a claim of ineffective assistance of counsel is precluded from review on direct appeal, provided there is a trial record, or an evidentiary hearing is held on motion for a new trial, and the trial court rules on the issue.

*Humphrey v. Commonwealth*, 962 S.W.2d 870, 872-73 (Ky. 1998).  A convicted defendant must present the issue to the trial court, via post-trial motion, thus creating a record and decision for review.  *See Wilson v. Commonwealth*, 601 S.W.2d 280, 284 (Ky. 1980); *Hopewell v. Commonwealth*, 641 S.W.2d 744, 748 (Ky. 1982); *Smith v. Commonwealth*, 2005 WL 1125337, at *3 (Ky. App. 2005) ("The issue of ineffective assistance . . . must be raised at the trial court level, generally by means of a post-trial motion, for it to be considered on appeal[.]").

It is true that Kentucky will not entertain an ineffective assistance claim on direct appeal not properly preserved at the trial level.  *See Goldsmith v. Commonwealth*, 363 S.W.3d 330, 333 (Ky. 2012) ("As a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial court ruling on which such a claim can be properly considered.") (quoting *Leonard v. Commonwealth*, 279 S.W.3d 151, 158 n. 3 (Ky. 2009)).  Further, the direct appeal context may not be the ideal vehicle in Kentucky because the post-trial motion window is narrow, the trial record may be less accessible, and identity of counsel from trial to appeal could present a conflict in perceiving and presenting claims of ineffectiveness.  *See Leonard*, 279 S.W.3d at 158 n. 3 (discussing

10

preclusive effect of direct-appeal ineffective assistance ruling and thus the "danger" of raising the claim on direct appeal, where the posture and context is not "best suited" for litigation of the theory). Kentucky prefers the RCr 11.42 route, but direct appeal review unquestionably is available. The *Martinez* court recognized that direct-appeal cognizance typically may be less than ideal as it addressed Arizona's choice to segregate such claims only to collateral proceedings. *See Martinez*, 132 S. Ct. at 1318 (acknowledging "sound reasons" to defer). Those reasons exist in Kentucky, but Kentucky still permits direct-appeal consideration. This is distinct from Arizona and renders *Martinez* inapplicable by its own terms.[6]

Two circuit level decisions have rejected application of *Martinez* under state processes similar to Kentucky. *See Dansby v. Norris*, 682 F.3d 711 (8th Cir. 2012); *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012). In *Dansby*, the Eighth Circuit held *Martinez* inapplicable to a federal habeas case arising out of Arkansas because Arkansas law does not bar a defendant from raising an ineffective assistance claim in a motion for new trial and/or on direct appeal. *Dansby*, 682 F.2d at 729 (noting Arkansas option "to raise a claim of ineffective assistance in a motion for new trial and on direct appeal"). In *Ibarra*, the Fifth Circuit held *Martinez* inapplicable in Texas on the same logic. *Ibarra*, 687 F.3d at 227. *Ibarra* noted that, under Texas law (as under Kentucky law), "a state habeas petition is the preferred vehicle for developing ineffectiveness claims." *Id.* at 227.

---

[6] Kentucky courts have begun to comment on *Martinez*. *See Denny v. Commonwealth*, 2012 WL 2604599, at *3 (Ky. App. July 6, 2012). *Denny* endorses the Supreme Court's "logic" on the importance of counsel at the first consideration of ineffective-assistance-of-trial-counsel claims. *See id.* To this point, however, none has addressed the key application issue here: whether Arizona's distinct system is the determinant on *Martinez*'s scope.

11

Yet, because Texas defendants have the **opportunity** to raise ineffective assistance claims on direct appeal, *Martinez* does not apply:

> In short, Texas procedures do not mandate that ineffectiveness claims be heard in the first instance in habeas proceedings, and they do not by law deprive Texas defendants of counsel and court driven guidance in pursuing ineffectiveness claims.

*Id.* Both courts interpret *Martinez* to be limited to those situations (as in Arizona) in which a state **completely bars** a defendant from raising ineffective assistance claims on direct review. *See Dansby*, 682 F.3d at 729; *Ibarra*, 687 F.3d at 226.

And so it is here. Kentucky allows, though discourages, direct appeal consideration of ineffective assistance of trial counsel claims.[7] Because Kentucky does not bar assessment of such claims on direct appeal, the limited procedural alteration of *Martinez* does not address or encompass defendants proceeding under Kentucky law. *See also Taylor v. McKee*, 649 F.3d 446, 452 (6th Cir. 2011) (decision issued in anticipation of a *Martinez* constitutional ruling, and noting, "that right would not apply here, since defendants in Michigan may bring ineffective assistance claims on direct appeal").

### 2.    Even if *Martinez* applied, Rule 60(b)(6) would not allow relief.

The Court does not find that *Martinez*'s modification of decisional law constitutes the kind of extreme and special circumstance that mandates relief from judgment under Rule 60(b)(6) in this case. Interests in comity and the finality of judgments weigh against reopening Foley's habeas petition. The Court notes that Foley's direct appeal and primary post-conviction proceedings in state court ended more than a decade ago. *See*

---

[7] Incidentally, the record shows that Foley's trial counsel and appellate counsel were distinct. See DE #30 (Petition) at 6-7. *See also* Transcript of the Record on Appeal to the Sixth Circuit, Vol. 35, at 918 (the Laurel Circuit Court noting, in one of its orders addressing Foley's 11.42 motion, that Foley was represented by Rodney McDaniel, who had also represented Foley in his direct appeal; McDaniel was not trial counsel).

*Foley v. Commonwealth*, 942 S.W.2d 876 (Ky. 1996); *Foley v. Commonwealth*, 17 S.W.3d 878 (Ky. 2000).  Further, in federal court, the District Court denied Foley § 2254 relief eight years ago, in May of 2004.  The Sixth Circuit affirmed the District Court's decision in May of 2007, and, following an unsuccessful petition for a writ of certiorari to the Supreme Court, that decision became final in 2008, four years ago.

Conventional notions of finality of litigation may hold less sway in habeas proceedings.  *See Blue Diamond*, 249 F.3d at 524 (citing *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)).  Still, in *Gonzalez*, the Supreme Court explained that while its "constructions of federal habeas statutes customarily apply to all cases then pending on direct review, not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final."  *Gonzalez*, 125 S. Ct. at 2650.  Looking to the merits of the case before it, the Court found that a change in the interpretation of § 2254's statute of limitations did not constitute the kind of "extraordinary circumstance" warranting Rule 60(b)(6) relief.  *Id.* (internal citation omitted).  Similarly, this Court finds that *Martinez*'s slight modification of *Coleman* does justify reopening Foley's habeas proceedings, which have been final for four years.

Foley offers little to justify treatment of this situation as exceptional or extraordinary.  Rather, as noted, he simply cites the *Martinez* procedural wrinkle and notes the capital nature of the conviction.  The Court is not persuaded that this case falls within that rare category of habeas claims for which Rule 60(b)(6) relief applies.  The case is long since final.  The slight procedural variance makes an equitable change in *Coleman*, but the Supreme Court notes, in downplaying the effect of the ruling:  "[I]n the 20 years since *Coleman* was decided, we have not held *Coleman* applies in circumstances

like this one." *Martinez*, 132 S. Ct. at 1319.  As the Fifth Circuit treated the identical issue in *Adams v. Thaler*, "Because the *Martinez* decision is simply a change in decisional law and is not the kind of extraordinary circumstance that warrants relief under Rule 60(b)(6), [defendant's] motion is without merit."  679 F.3d at 320 (citation and internal quotation marks omitted).  The categorical argument and effort Foley makes simply indicates that he is in the same position as any other capital defendant in this context.  That does not qualify his scenario as extraordinary.[8]  *See United States v. Yisra'el*, 2012 WL 4361447, at *1 (S.D. Ohio Mar. 23, 2012); *Adams*, 679 F.3d at 320 (calling *Martinez* variance "hardly extraordinary").

### III. Foley Does Not Present A Substantial Underlying Claim

Even if *Martinez* applied to Kentucky-based convictions, and even if Foley fit within the small space of Rule 60(b)(6), he would receive no relief on this record.  Foley argues that ineffectiveness of post-conviction counsel excuses procedural default of five underlying claims.  First, Foley argues that post-conviction counsel's failure to properly assert, as a violation of federal constitutional provisions, his claim that trial counsel was ineffective for failing to retain a qualified ballistics expert provides cause for his default of the claim.  Next, he argues that post-conviction counsel's failure to present evidence regarding the following four claims at an evidentiary hearing on his 11.42 motion excuses their default:

a)  Trial counsel provided ineffective assistance in failing to seek a mental health exam and determine Foley's competency prior to trial;

b) Trial counsel provided ineffective assistance in failing to retain a qualified ballistics expert;

---

[8] An additional important factor influencing this decision is the fact that Foley, as explained below, does not raise a substantial underlying claim for relief from judgment.

c)  Trial counsel provided ineffective assistance in failing to impeach the trial testimony of Marge Foley with evidence of her personal relationships with police officers; and

d)  The prosecutor improperly provided trial witnesses with portions of materials from discovery and used these materials to coach witnesses prior to their testimony.

Foley asks the Court to reopen federal habeas proceedings to consider the merits of these claims.  The Commonwealth did not respond specifically, instead making only the *Martinez* scope argument, but the Court has parsed the record.

The Court may easily dispose of the final claim listed above—the claim that post-conviction counsel was ineffective for failing to present evidence that the prosecutor used discovery materials to improperly coach witnesses.  This is not a claim based on the ineffectiveness of trial counsel, nor was it couched as such in Foley's original habeas petition in this Court.  *See* DE #31 at 174-75.  *Martinez* held only that post-conviction counsel's conduct in initial-review collateral proceedings may excuse the procedural default of *ineffective-assistance-of-trial-counsel claims*.  *See Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  *Martinez* does not provide a new basis for excusing the default of a claim centered on prosecutorial misconduct.  Accordingly, Foley presents no ground to reopen judgment to consider the merits of such a claim.

Under *Martinez*, in order to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim, a petitioner who was represented by counsel in post-conviction proceedings must show: (1) that appointed counsel in the initial-review collateral proceeding was ineffective under the standards of *Strickland v. Washington*,

466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

Under *Strickland*, a petitioner asserting the ineffective assistance of counsel must prove, by a preponderance of the evidence, both deficient performance and prejudice. *Strickland*, 104 S. Ct. at 2064; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). In order to prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial, the second prong of the analysis, only when a petitioner can "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of *Martinez*, a demonstration of prejudice would require Foley to show that, but for post-conviction counsel's errors, there is a reasonable probability he "would have received relief on a claim of ineffective assistance of trial counsel in state court." *See Leavitt v. Arave*, 2012 WL 1995091, at *10 (D. Idaho June 1, 2012).

16

The Court addresses the remainder of Foley's claims under these standards.

### 1.    Trial Counsel's Failure to Obtain a Mental Health Examination or Competency Hearing

In his habeas petition, Foley argued that the Kentucky Supreme Court unreasonably applied clearly established federal law when it held that trial counsel did not provide constitutionally ineffective assistance by failing to seek a mental health examination or request a hearing to determine Foley's competency to stand trial. *See* DE #31 at 163-66.  Foley noted that he was taking anti-depressant medication during the course of the trial, and he was hospitalized as a result of an overdose of that medication a few days before the trial commenced. *Id.* at 164.  Foley also noted that he wrote letters to his grandmother, who was already deceased, in 1992 and 1993, encompassing the time period when his trial took place. *Id.*  Foley asserted that trial counsel had a duty to report anything suggesting that he was incompetent to stand trial. *Id.* at 165.

Judge Johnson recommended denying this claim, *see* DE #63, and the District Judge adopted his recommendation in its entirety, *see* DE #69.  Foley now argues that *Martinez* provides a basis for reopening the claim.  DE #116 at 8-10.  Foley concedes that Judge Johnson's recommendation stated that Foley had "not shown that the state adjudication of his ineffectiveness claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *See id.* at 10 (quoting DE #63 at 28).  Foley argues, however, that the state court record was inadequate due to post-conviction counsel's ineffectiveness. *Id.*  Specifically, Foley argues that post-conviction counsel was ineffective for failing to timely file a motion for the assistance of a mental health expert in making the claim, failing to provide supporting affidavits in order to properly appeal the denial of that expert, and failing to enter any

supporting medical documentation of brain injury. *Id.* Foley states that the Kentucky Supreme Court noted the lack of proof of mental impairment in affirming the trial court's denial of 11.42 relief. *Id.* at 9.

Significantly, neither the Kentucky Supreme Court nor Judge Johnson made a finding that Foley defaulted this claim. Instead, the Kentucky Supreme Court ruled as follows:

> It is axiomatic that federal and state law prevent the trial of an incompetent defendant. KRS 504.090; RCr 8.06. If there are reasonable grounds to believe that a defendant is not competent to stand trial, the proceeding must be discontinued and the trial judge must appoint a psychologist or psychiatrist to examine the defendant, file a report and then a hearing must be held. KRS 504.100. Here, at the RCr 11.42 hearing, trial counsel testified that Foley assisted him in his defense and that they worked very closely. The attorney further testified that he did not remember anything that made him think Foley was incompetent during trial and that Foley seemed lucid and was able to converse with him and others. Foley testified in his own defense for over one and one-half hours. The trial judge had the opportunity to observe that Foley was able to communicate effectively his version of the offense and was able to answer questions both on direct and cross-examination.

> Foley did not testify at his RCr 11.42 hearing. No medical proof of any mental history was offered to support the claim of incompetency. The only evidence introduced indicating any bizarre behavior were letters supposedly written by Foley to his deceased grandmother shortly before trial. Although family members spoke of various head injuries suffered by Foley during childhood, no medical records were presented to support such testimony. Trial counsel testified at the RCr 11.42 hearing that he saw no signs of mental illness and that he had no problem communicating with Foley before and during the trial, and that Foley maintained his own trial folder and discussed it intelligently with counsel. There was no evidence that Foley was incompetent. The authorities cited by Foley are unpersuasive. Trial counsel was not ineffective for declining to request a competency hearing.

*Foley*, 17 S.W.3d at 885-86.  Thus, the Kentucky Supreme Court, while noting the lack of medical data supporting Foley's claims, reached the claim's merits.[9]

Similarly, Judge Johnson lamented the lack of medical records presented at the 11.42 evidentiary hearing to substantiate Foley's claims of childhood head injuries and functional mental impairment.  *See* DE #63 at 25, 26.  He noted, however, that "Foley's trial counsel had no reason to believe that searching for childhood medical records might yield any useful information, and in fact, the 11.42 testimony indicated that *no records of any head injury exist*."  *Id.* at 27 (emphasis added).  Judge Johnson also reached the merits of Foley's claim.  He found that trial counsel made a reasonable decision that further investigation of Foley's mental health was not necessary in light of factors such as Foley's intelligence, his full involvement in assisting his own defense, and his lack of history of any mental illness.  *Id.* at 25.  Judge Johnson observed that "[t]he circumstances of Foley's case contrast sharply with cases where courts have found ineffectiveness after counsel ignored available medical records that showed actual brain injury."  *Id.* at 27.  Judge Johnson found that Foley's "numerous efforts to hide or destroy evidence, his bullying and threatening of witnesses, his attempts to cast blame on others by deliberately planting the murder weapon at another premises, and his attempts to convince other prisoners to lie for him" belied the notion that he was unable to reason or appreciate the wrongfulness of his criminal acts.  *Id.* at 26.  The District Judge adopted Judge Johnson's recommendation without additional comment.  *See* DE #69.

This Court simply did not find that Foley's ineffective assistance of trial counsel claim, relating to the failure to request a mental health exam or a competency hearing,

---

[9] The 11.42 trial court specifically assessed competency proof, also reaching the merits. *See* Transcript of the Record on Appeal to the Sixth Circuit, Vol. 36, at 1026.

had been procedurally defaulted.  Accordingly, *Martinez* does not provide justification to reopen federal habeas proceedings to allow Foley an attempt to establish cause for a nonexistent procedural default.  Moreover, to the extent this Court did consider the claim defaulted due to a lack of evidence presented at the state trial court level, Foley has not made a sufficient showing to justify reopening the claim under *Martinez*'s standards. Even if the Court assumes that post-conviction counsel's performance was deficient,[10] for all the reasons stated in Judge Johnson's recommendation, Foley cannot show prejudice. In particular, he cannot show that, but for post-conviction counsel's errors, there is a reasonable probability he would have received relief on his ineffective-assistance-of-trial-counsel claim.  By the same reasoning, he does not show that the underlying trial-counsel ineffectiveness-claim is substantial, for *Martinez* purposes.[11]

### 2.      Trial Counsel's Failure to Obtain a Qualified Ballistics Expert

In his habeas petition, Foley claimed that trial counsel provided constitutionally ineffective assistance by failing to secure the services of a qualified ballistics expert.  DE #31 at 153.  Specifically, Foley argued that his defense at trial was that he killed Rodney

---

[10] In *Martinez*, the petitioner's attorney initiated a state collateral proceeding while the direct appeal was pending, but "made no claim trial counsel was ineffective and later filed a statement asserting she could find no colorable claims at all."  132 S. Ct. at 1314. Although the state trial court gave the petitioner forty-five days to file a *pro se* petition in support of post-conviction relief, he did not respond, and the petitioner "later alleged that he was unaware of the ongoing collateral proceedings and that counsel failed to advise him of the need to file a *pro se* petition to preserve his rights."  *Id.*  The Court notes that this is a far cry from post-conviction counsel's conduct in this case.  Here, counsel raised twenty-six grounds for relief in Foley's RCr 11.42 motion, including numerous claims of ineffective assistance of counsel.  *See Foley*, 17 S.W.3d at 886; *see also Leavitt*, 2012, WL 1995091, at *10.

[11] The Court notes that each of Foley's enumerated arguments for relief is conclusory, fails to provide specific proof (*e.g.,* a proffer of expert or other evidence) in support of relief, and does not account for prejudice.

Vaughn in self-defense after Rodney shot and killed Lynn Vaughn.  *Id.*  Foley contended that central to his defense was expert testimony regarding irregular bullet holes in the walls and the trajectory of the bullets.  *Id.*  Foley noted that defense "expert" Pershing Hayes was allowed to testify, but the trial court did not qualify him as an expert witness, and as such he was not permitted to state an expert opinion.  *Id.*  Foley argued that it was unreasonable and prejudicial for trial counsel to rely on Hayes, a lay witness, to present such critical defense evidence to the jury.  *Id.* at 154.

Again, Judge Johnson recommended denying this claim (*see* DE #63), and the District Judge adopted his recommendation in its entirety (*see* DE #69).  Foley now contends that he procedurally defaulted the claim due to post-conviction counsel's error, and therefore, in light of *Martinez*, the Court should reopen federal habeas proceedings.

Foley first contends that his 11.42 counsel erred by failing to raise the claim of trial counsel's ineffectiveness with respect to the ballistics expert as a violation of federal constitutional law, thus precluding federal habeas review.  *See* DE #116 at 6.  Next, Foley alleges that post-conviction counsel violated his "duty to conduct a prompt and thorough investigation into the case, which includes the consultation with and engagement of relevant experts," thus leading to Foley's default of the claim.  *See id.* at 11.  Specifically, Foley alleges that post-conviction counsel provided ineffective assistance by failing to retain, and to seek funds to retain, a ballistics expert until three days prior to the RCr 11.42 evidentiary hearing, even though the 11.42 motion had been filed nearly a year earlier.  *See id.* at 10-12.  Foley further alleges that post-conviction counsel erred by failing to offer an affidavit from himself or the expert regarding the expert's proposed testimony, noting that the Kentucky Supreme Court affirmed the trial court's denial of the

expert in part on the ground that there was "no indication as to what a ballistics expert . . . would have testified or why [his] testimony was material.  Again, no affidavits of any nature were filed."  *See id.* at 11 (quoting *Foley*, 17 S.W.3d at 888).

In spite of Foley's representations to the contrary, neither the Kentucky Supreme Court nor this Court found that Foley procedurally defaulted his claim that trial counsel was ineffective for failure to obtain the services of a qualified ballistics expert.  The Laurel Circuit Court did deny Foley an evidentiary hearing on this issue, finding that although the trial court refused to recognize Mr. Hayes as an expert, he was allowed to testify on the issues raised by Foley in his motion, and there was therefore no ineffective assistance and no prejudice.  *See* Transcript of the Record on Appeal to the Sixth Circuit, Vol. 35 at 920-21, 932; *see also Foley*, 17 S.W.3d at 886.  In reviewing the trial court's denial of Foley's 11.42 motion, the Kentucky Supreme Court specifically found that "[t]he ballistic expert used by the defense was allowed to testify and was extensively cross-examined at trial.  The trial court was correct in finding there was no ineffective assistance of counsel in this respect."  *Id.*

In his habeas petition, Foley raised the issue of trial counsel's failure to secure a qualified ballistics expert, as well as a number of other ineffectiveness issues, as part of claim number 29.  *See* DE #31 at 148-154.  Judge Johnson resolved claim 29 in his Report and Recommendation.  *See* DE #63 at 90-93.  Although he did not distinctly address the ballistics expert issue, he stated,

> To the extent Foley is raising habeas claims of ineffectiveness based on meritless issues that have been discussed herein, the analysis of such underlying issues need not be repeated here.  See Habeas Issues #2, 6, 8, 9, 11-16, 19-21, and 24-26.  If the underlying ground is meritless, a petitioner cannot show resulting "prejudice" under *Strickland*.  The prejudice component of the *Strickland* test focuses on the question of

> whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair …. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.

DE #63 at 91 (final citation omitted). Claims 12 and 13 related to the ballistics expert. In claim 12, Foley alleged that his constitutional rights to present a defense and due process were violated when the trial court failed to confer expert status on Hayes, Foley's firearms expert. *See* DE #31 at 98-100. In claim 13, Foley alleged that his constitutional rights to a fair trial and due process were violated when the trial court failed to grant Foley a brief continuance to obtain a new firearms expert. *See id.* at 100-102. In Judge Johnson's resolution of claims 12 and 13, he noted:

> The trial court found that Hayes was not qualified as an expert for ballistics. The trial judge declined to continue the trial, but indicated he would reconsider in the afternoon. The record reflects that while the court recessed, defense counsel checked in Louisville with another expert. The record indicated that Ronnie Freels of the Kentucky State Police Lab was available as a ballistics expert to assist Foley that day. In the afternoon when court reconvened, the trial judge *granted* Foley's request to allow him to call Hayes as a lay witness. Hayes then testified as to his credentials and experience in shooting firearms, and then testified fully to the information that Foley desired him to present to the jury. As Foley had been able to present the desired testimony, his counsel made no further request for continuance and did not seek another expert.

*Id.* at 64 (citations omitted) (emphasis in original). Judge Johnson further noted that, in reviewing Foley's claim that the trial court erred by not qualifying Hayes as an expert on direct appeal, the Kentucky Supreme Court explained that Hayes was a friend of Foley's

> who had worked with firearms his entire life and knew the mechanics of several types of guns. He gave testimony on the necessary trajectory of the bullets in order to create the holes in the wall at the murder scene. His testimony implied that [Foley] could not have fired at Lynn. The court did not accept Pershing Hayes as an expert because of lack of training. However, Hayes was allowed to testify, although not as an expert, and the jury was aware of his extensive experience and knowledge of firearms.

23

*Id.* at 65 (quoting *Foley*, 942 S.W.2d at 889).  According to Judge Johnson, "[t]he jury heard all the testimony that Foley had planned to present[.]"  *Id.* at 66.

With his disposition of claim 29, explicitly referencing his discussion of claims 12 and 13, it is clear Judge Johnson intended to fully resolve on the merits Foley's claim that trial counsel provided ineffective assistance by failing to produce a qualified ballistics expert.  As noted previously, the District Judge adopted Judge Johnson's recommendation on this issue.  Accordingly, Foley did not procedurally default the claim, and *Martinez* is inapplicable.

Alternatively, to the extent the District Court found that Foley defaulted the ballistics expert ineffective assistance claim,[12] Foley cannot make a sufficient showing for relief under *Martinez*.  Even assuming the ineffectiveness of post-conviction counsel,[13] for the reasons Judge Johnson noted above, including the fact that Hayes was permitted to testify and the fact that the jury heard all the evidence Foley intended to

---

[12] Judge Johnson did find that Foley failed to raise any **federal** constitutional issues with respect to claims 12 and 13 in state court.  *See* DE #63 at 64.  Judge Johnson went on to note, however, that to the extent Foley's habeas claims were cognizable, Foley failed to explain how the Kentucky Supreme Court's decision resulted in any violations of the Fifth, Sixth, and Fourteenth Amendments.  *See id.* at 65.

[13] Whether Foley could show that post-conviction counsel's conduct, as alleged by Foley in this claim, would constitute ineffective assistance under *Strickland* is doubtful.  It does appear that Foley's post-conviction counsel raised the ineffective-assistance-of-trial-counsel claim as a matter of constitutional law in the 11.42 motion.  *See Foley*, 17 S.W.3d at 886 ("The ballistic expert used by the defense was allowed to testify and was extensively cross-examined at trial.  The trial court was correct in finding that there was no ineffective assistance in this respect.").  Further, in its review of Foley's 11.42 motion, the Kentucky Supreme Court noted that Foley had no constitutional right to expert assistance in a collateral attack proceeding, and the court further stated that Foley had not shown that the expert he contacted for the 11.42 hearing was reasonably necessary or could change the jury verdict.  *Id.* at 887.  Thus, it appears unlikely that Foley could demonstrate that post-conviction counsel's performance was deficient, or that post-conviction counsel's deficient performance resulted in prejudice.

24

present about bullet holes and bullet trajectory through Hayes's testimony, Foley cannot demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is substantial. In other words, he cannot show that post-conviction counsel's performance prejudiced him in the state RCr 11.42 proceedings. Foley in no way demonstrates "some merit" to the argument that different post-conviction processing would have produced a different 11.42 result.

### 3. Trial Counsel's Failure to Sufficiently Impeach Marge Foley

In his habeas petition, Foley claimed the Kentucky Supreme Court unreasonably applied federal law when it found that he was not denied constitutionally effective assistance of counsel through the failure of his trial attorney to impeach prosecution witness Marge Foley with evidence of her close personal relationship with a police officer and evidence of her receipt of money from another police officer. DE #31 at 177. Marge Foley was Foley's estranged wife at the time of trial. *See id.* According to Foley, prior to his trial, Marge wrote him a letter revealing that she had become pregnant by a state police officer who gave her $300 for an abortion, and another police captain gave her $5,000 out of a fund.[14] *Id.* Foley argued that trial counsel's failure to impeach Marge with this information, which suggested that she had a motive to testify for the prosecution, amounted to ineffective assistance. *Id.* at 177-78. Foley argued that the state courts denied this claim without giving him an evidentiary hearing on the issue, but then castigated him for failing to present evidence in support of the claim. *Id.* at 178.

---

[14] In a supplement to his 11.42 motion, Foley identified the letter as having been written by Marge Foley based on his knowledge of her handwriting gained during their marriage. DE #31 at 177 n. 40.

Judge Johnson recommended denying this claim, *see* DE #63 at 102-04, and the District Judge adopted his recommendation, providing additional analysis, *see* DE #69 at 26-7. Foley now argues that he procedurally defaulted the claim as a result of post-conviction counsel's ineffectiveness. *See* DE #116 at 14. Specifically, Foley contends that although post-conviction counsel filed the letter from Foley's estranged wife as an exhibit to the 11.42 motion, counsel did not authenticate or introduce the letter at the hearing or demonstrate trial counsel's access to the letter at the time of trial. *Id.* Thus, the Kentucky Supreme Court denied relief on the issue. *See id.* at 15 (citing *Foley*, 17 S.W.3d at 889-90). Foley argues that post-conviction counsel's failure to adduce any testimony regarding the letter amounted to a waiver of the issue at the evidentiary hearing. *Id.* He also contends that his claim was procedurally defaulted in federal court based on post-conviction counsel's inadequate representation, warranting reopening the habeas judgment to consider the merits of the matter under *Martinez. Id.*

In its review of the trial court's denial of Foley's 11.42 motion, the Kentucky Supreme Court addressed the issue of trial counsel's failure to use the letter purportedly sent to Foley from Marge Foley for impeachment purposes:

> An examination of the record does not indicate any testimony that the trial attorney was made aware of an alleged letter from Foley's wife to the defendant prior to trial. . . . Foley does not state when he received the letter, nor does he indicate when trial counsel became aware of the letter during trial. Foley, who testified in his own defense, made no mention of the facts that he now argues. Trial counsel cross-examined Foley's wife concerning pending criminal charges against her and the fact that she had unresolved custody litigation. At trial, Foley testified that his wife was "a dopehead and a whore."
>
> The trial judge correctly found that Foley did not assert that he made trial counsel aware of the purported letter or that he asked trial counsel to question his wife about the alleged letter. Foley did not testify at the RCr 11.42 hearing.

26

> In attempting to obtain post-conviction relief, the movant must present facts with sufficient particularity to generate a basis for relief. RCr 11.42(2); *Skaggs v. Commonwealth*, 803 S.W.2d 573 (Ky. 1990); *Lucas v. Commonwealth*, 465 S.W.2d 267 (Ky. 1971).

*Foley*, 17 S.W.3d at 889-90.   In other words, the Kentucky Supreme Court found that Foley had not set forth a sufficient factual basis for relief with respect to this claim under the Kentucky Rules and Kentucky law.   *See id.*   The court noted, however, that Foley's trial counsel attacked Marge Foley's credibility.   *See id.* at 890.   The court further noted that Foley made no mention of the letter during his own trial testimony, although he otherwise made disparaging remarks about his estranged wife.   *See id.*

In his Recommendation, Judge Johnson referenced the Kentucky Supreme Court's disposition of the issue.   *See* DE #63 at 102, 103.   Additionally, Judge Johnson found that "[e]ven if counsel had pursued a particular line of questioning in order to further impeach Marge Foley, the specific points that petitioner speculates would have been brought out would not warrant habeas relief."   *Id.* at 104.   Judge Johnson explained that, under *Strickland*, a defendant "is not entitled to a 'perfect' defense, only a competent one."   *Id.*   Judge Johnson determined that there was no reasonable probability cross-examination regarding the letter would have produced a different verdict.   *Id.* Indeed, Judge Johnson referred to Foley's claim as a "classic case of second guessing, an argument which cannot succeed under the *Strickland* test and its deferential review of attorney performance."   *Id.* (quoting *Wong v. Money*, 142 F.3d 313, 321 (6th Cir. 1998).

Thus, Judge Johnson evaluated Foley's claim using the *Strickland* analysis.   He did not merely find that the claim had been procedurally defaulted and refuse to reach the merits.   In his opinion, the District Judge added that Foley's trial counsel did not err by

failing to conduct a more thorough investigation to learn of the letter.  DE #69 at 26. According to the District Judge, "Foley participated in his own defense and his attorney had no reason to suspect that he would withhold useful information."  *Id.* at 27. Significantly, the District Judge concluded, "[E]ven if he had introduced this evidence, the benefit for Foley would have been minor and no prejudice resulted."  *Id.*

In sum, while the Kentucky Supreme Court found that Foley did not present sufficient facts to generate a basis for relief on his ineffective assistance claim, at the same time the court suggested that trial counsel did not provide deficient performance by failing to use the letter purportedly sent to Foley by his estranged wife for impeachment purposes.  On federal habeas review, both Judge Johnson and the District Judge determined that Foley could not satisfy *Strickland*'s standards with respect to the claim. Under these circumstances, *Martinez* provides no basis for relief—the federal courts reached the merits of the argument.  To the extent the claim was procedurally defaulted, and assuming the ineffectiveness of Foley's post-conviction counsel,[15] there is no basis for reopening the judgment; the underlying ineffective-assistance-of-trial-counsel claim is not substantial for all the reasons stated by the Kentucky Supreme Court, Judge Johnson, and the District Judge.  There is no reasonable probability that a more effective presentation of the claim by post-conviction counsel would have resulted in success in the RCr 11.42 proceedings.

---

[15] Though, with respect to this claim, Foley's complaint seems to be less that post-conviction counsel was ineffective and more that the state court erred by failing to give him an evidentiary hearing.

**V. Certificate of Appealability**

The Sixth Circuit has held that a certificate of appealability "is necessary not only to appeal the initial denial of a writ of habeas corpus, but also to appeal from the denial of a motion brought pursuant to Rule 60(b)." *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010) (citing *United States v. Hardin*, 481 F.3d 924, 926 (6th Cir. 2007)). A certificate of appealability may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to "show that reasonable jurists could debate that the petition could have been resolved differently or that the claims raised deserved further review." *Johnson*, 605 F.3d at 339 (citing *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003)). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Here, Foley has not made a "substantial showing" as to any claimed denial of rights. The Court believes its determination is not debatable. Despite *Martinez*, none of the claims presents a close issue or merits further review.

**VI. Recommendation**

For the reasons stated above, the Court **RECOMMENDS** that the District Court **DENY** Foley's Rule 60(b) motion (DE # 116) to reopen, and for relief from, the Court's prior Judgment. The Court further **RECOMMENDS** that the District Court **DENY** a certificate of appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 15th day of November, 2012.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**