UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ROBERT C. FOLEY, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 00-552-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RANDY WHITE, Warden of Kentucky | ) | **MEMORANDUM OPINION** |
| State Penitentiary, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Petitioner Robert C. Foley's Motion for Relief from and to Re-Open Judgment Pursuant to Federal Rule of Civil Procedure 60(b). [Record No. 116]  The motion was referred to United States Magistrate Judge Robert E. Wier for initial review pursuant to 28 U.S.C. § 636(b)(1)(B).  On November 15, 2012, Magistrate Judge Wier filed a report in which he recommended that Foley's motion be denied. [Record No. 126]  Foley filed objections to the Magistrate Judge's report on December 6, 2012. [Record No. 132]

Having reviewed *de novo* the portions of the Magistrate Judge's report to which objections have been made, the Court concludes that Foley's objections are without merit.  The undersigned will adopt the Magistrate Judge's Recommended Disposition in full.[1]

---

1       Although this Court must make a *de novo* determination of those portions of a magistrate judge's recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  A party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986).  Further, a

-1-

# I.

On September 23, 1993, Foley was convicted in the Laurel Circuit Court for the murders of Rodney and Lynn Vaughn. Thereafter, the trial court adopted the jury's recommendation and imposed two death sentences for these murders.[2] *See Foley v. Commonweatlh,* 942 S.W.2d 876, 879-888 (Ky. 1996). As summarized by the Sixth Circuit Court of Appeals, the underlying facts of this case are as follows:

> Robert Carl Foley shot and killed the brothers Rodney and Lynn Vaughn in Foley's home in Laurel County, Kentucky, on August 17, 1991. A number of people, including the Vaughn brothers, Phoebe Watts, Ronnie and Bill Dugger, Rocky and Lisa Arthur, Marge Foley (petitioner's wife), Louise Bridges (Foley's aunt), and at least six children, were gathered at the Foley home when Foley returned from a car auction with his friend Danny Joe Bryant. Although the other men present had stored their guns in a kitchen cabinet upon arrival, Foley kept a .38 Colt snubnose revolver stored under his belt and concealed by his shirt.

> The group sat at the kitchen table drinking beer, and tempers soon flared between Foley and Rodney Vaughn, who was intoxicated and belligerent. Foley admitted he instigated a fight by punching Rodney. After a brief scuffle, Danny Joe Bryant separated the men, and they returned to the table to continue drinking. The situation escalated, however, when Rodney pointed at Foley and warned Foley not to sucker-punch him again. Foley responded violently, knocking Rodney down with his fist several times. Foley then drew his revolver and shot Rodney six times at close range, in the chest, left arm, and back.

> The house emptied during the melee, leaving only Foley, the Vaughn brothers, and Ronnie Dugger in the house. As the only living witness (other than Foley) to what happened next, Ronnie Dugger explained that Foley retrieved another gun from the kitchen cabinet, returned to the living room where Lynn Vaughn remained next to his dying brother, and shot Lynn in the back of the head. He then kicked Rodney Vaughn's corpse, saying "you son of a bitch, you caused me to have to kill my partner." Later, Foley explained that he hated to kill Lynn, "but

---

general objection to the entirety of a magistrate judge's report has the same effect as a failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

2       Foley is currently under four other death sentences for the murder of four other individuals.

blood is thicker than water."

Foley then organized Ronnie Dugger, Bill Dugger, and Danny Joe Bryant to assist him in disposing the bodies and covering up the crimes.  They dumped the Vaughn brothers' bodies in Sinking Creek in Laurel County and attempted to cover up the incident and cast blame on other people.  Authorities discovered the bodies two days later and indicted Foley on two counts of capital murder and other related offenses.  Foley was later charged with four more murders after police discovered four corpses in a septic tank in Laurel County.[3]

[Record No. 80, p. 3; *Foley v. Parker*, 488 F.3d 377, 381 (6th Cir. 2007) ]  Foley's direct appeal of his conviction and the two death sentences to the Supreme Court of Kentucky was unsuccessful.  Additionally, the United States Supreme Court denied certiorari in 1997.  *See Foley v. Commonwealth*, 942 S.W.2d 876 (Ky. 1996), *cert. denied*, 522 U.S. 893 (1997).

On October 14, 1997, Foley filed a post-conviction motion pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42 to vacate, set aside, or correct his sentence.  At this hearing Foley raised twenty-six issues.  In particular, the petitioner claimed that his trial counsel was ineffective for: (a) failing to secure the services of a qualified ballistic expert; (b) failing to have Foley's mental health and competency evaluated prior to trial; and (c) failing to impeach a witness, his wife Marge Foley, with her personal relationship with two police officers.  Foley also claimed that he was denied due process of law based, in part, on the prosecutors: (a) meeting with witnesses prior to trial; (b) presenting witnesses with discovery in the case; and (c) coaching the witnesses on their upcoming testimony.  [Record No. 116, p. 2]

---

3       A more detailed recitation of the factual and procedural history of Foley's case can be found in Magistrate Judge J. B. Johnson, Jr.'s Report and Recommendation.  [Record No. 63, pp. 1-7]  The Court will not recite the entire history of this case here, as it has been recited multiple times in the record of this action.

Following an evidentiary hearing on Foley's RCr 11.42 claims, the Laurel Circuit Court found all twenty-six of his arguments to be without merit and denied his motion. The Kentucky Supreme Court later affirmed this ruling. *See Foley v. Commonwealth*, 17 S.W.3d 878 (Ky. 2000), *cert. denied*, 531 U.S. 1055 (2000).[4]

On June 8, 2001, Foley filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court. [Record No. 30] Following an extended briefing period, Magistrate Judge J. B. Johnson, Jr., filed a lengthy Report and Recommendation ("R&R") in which he recommended that Foley's petition be denied and that a Certificate of Appealability be issued for four of Foley's thirty-six claims.[5] [Record No. 63] On May 24, 2004, the Court adopted Magistrate Judge Johnson's R&R. The Court denied Foley's petition but granted a Certificate of Appealability regarding the four claims identified by the Magistrate Judge. [Record No. 69] On May 21, 2007, the Sixth Circuit Court of Appeals affirmed the Court's denial of habeas relief, and the United States Supreme Court again denied Foley review. *See Foley v. Parker*, 488 F.3d 377, 381 (6th Cir. 2007), *cert. denied Foley v. Simpson*, 553 U.S. 1068 (2008).

On June 7, 2012, Foley filed the present motion for relief under Federal Rule of Civil Procedure 60(b). [Record No. 116] He contends that the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), warrants the reopening of his habeas proceedings to consider the merits of certain claims which the Court previously deemed to be procedurally

---

4       Foley also petitioned the Laurel Circuit Court for a new trial pursuant to Kentucky Rule of Civil Procedure 60.2 and RCr 10.02, which the court ultimately denied, and the Kentucky Supreme Court affirmed. *Foley v. Commonwealth*, No. 2002-SC-0222-TG, 2003 Ky. Unpub. LEXIS 32, at *1, 9-10 (Ky. Aug. 21, 2003).

5        Foley originally raised thirty-five claims, but was granted leave to raise an additional claim. This additional claim was also found to be without merit.

defaulted. Foley argues that he was denied the opportunity to litigate a number of post-conviction claims in state court pertaining to the alleged ineffective assistance of his state trial counsel because of the alleged ineffective assistance of his state court post-conviction counsel. Specifically, Foley maintains that his state post-conviction counsel did not "federalize" his claim of trial counsel's ineffectiveness in failing to retain a qualified ballistic expert. Further, he contends that counsel ineffectively assisted him by failing to present evidence in support of his mental health, ballistic, prosecutorial misconduct, and failure to impeach claims. [Record No. 116, p. 5] On July 9, 2012, the Warden filed a Response to Foley's 60(b) motion, arguing that *Martinez* is inapposite to federal habeas cases originating from Kentucky. [Record No. 118]

On November 15, 2012, the Magistrate Judge issued his report in which he recommended that Foley be denied the relief he seeks and that the Court not issue a Certificate of Appealability. [Record No. 126] On December 6, 2012, Foley filed objections to the Recommended Disposition. [Record No. 132] In his objections, Foley rehashes a number of prior arguments and objects to the Magistrate Judge's findings that: (1) *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), does not apply to Kentucky's post-conviction proceedings [Record No. 132, pp. 2-10]; (2) *Martinez* does not warrant Rule 60(b)(6) relief [*Id.*, pp. 10-11]; and (3) his underlying claims are not substantial and without merit. [*Id.*, pp. 11-22] However, for the reasons outlined below, the Court will overrule Foley's objections to the Magistrate Judge's Recommended Disposition and deny the relief sought by the petitioner.

## II.

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to provide relief from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Foley argues that the Supreme Court's ruling in *Martinez* provides grounds for relief pursuant to subsection six of Rule 60(b) as "any other reason that justifies relief."

The Court's discretion to vacate a judgment pursuant to Rule 60(b) is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). As correctly noted by Magistrate Judge Wier, the Sixth Circuit applies "[e]ven stricter standards . . . to motions under subsection (6) of Rule 60(b) than to motions made under other provisions of the rule." *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007). In fact, relief under 60(b)(6) requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005). And a finding

of extraordinary circumstances under this provision is warranted only in "unusual and extreme situations where principles of equity mandate relief." *Olle v. The Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).

A court's decision to grant relief under Rule 60(b)(6) includes a case-by-case inquiry which "requires [that the] trial court . . . intensively balance numerous factors, including the competing policies of the finality of judgments and the 'incessant command of the court's conscience that justice be done in light off all the facts.'" *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund,* 249 F.3d 519, 529 (6th Cir. 2001) (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Further, the district court's discretion in determining whether to grant Rule 60(b)(6) relief is particularly broad, given the equitable principles involved. *Johnson v. Dellatifa,* 357 F.3d 539, 543 (6th Cir. 2004).

Additionally, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997). Thus, it is well-settled that a "change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *Blue Diamond Coal Co.*, 249 F.3d at 524. Further, courts may also consider the "probable merit of the movant's underlying claims" along with "the opposing party's reliance interests in the finality of the judgment, and other equitable considerations." *Gonzalez*, 545 U.S. at 540 (2005).

### III.

Foley asserts that the Supreme Court's recent ruling in *Martinez* has altered the procedures for litigating ineffective-assistance-of-counsel claims in Kentucky-based federal

-7-

habeas petitions.   In reviewing the constitutionality of a state prisoner's conviction and sentence,[6] federal habeas courts are "guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). Included in these "rules" is the doctrine of procedural default[7] "under which  a federal court will not review the merits of claims, including constitutional claims, that a state court *declined to hear* because the prisoner failed to abided by a state procedural rule." *Id.* (internal citations omitted) (emphasis added).

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that federal habeas review of a state prisoner's procedurally defaulted claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 750.  The *Coleman* Court proceeded to find that an attorney's ineffective assistance in a post-conviction proceeding cannot constitute "cause" necessary to excuse the prisoner's procedural default in federal habeas proceedings.  *Id.* at 754-55, 756; *see also Ritchie v. Eberhart*, 11 F.3d 587, 591-92 (6th Cir. 1993).

_____

6       Where a state court has adjudicated a constitutional claim on its merits, a petitioner is required to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254 (d).

7       Procedural default occurs "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim."  *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 200).  Additionally, the Sixth Circuit has explained that procedural default results when three elements are satisfied: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim."  *Id.* (quoting *Maupin v. Smith* , 785 F.2d 135, 138 (6th Cir. 1986).

The Supreme Court's recent holding in *Martinez v. Ryan*, however, carved out a narrow exception to the *Coleman* rule. 132 S. Ct. at 1315. The *Martinez* Court concluded that, under certain limited circumstances, deficient performance of a state habeas attorney may serve as "cause" under *Coleman*. It held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. Additionally, the *Martinez* Court held that "[t]his opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The *Martinez* Court opined that where "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317. Thus, when petitioners are required to raise claims of ineffective-assistance-of-counsel on state habeas review, as in Arizona, the deficient performance of post-conviction counsel may excuse an otherwise valid procedural bar. *See Id.* at 1320.

Foley's first two objections to Magistrate Judge Wier's Recommended Disposition are based upon whether the Supreme Court's ruling in *Martinez* is applicable to federal Kentucky-based habeas petitions, and whether the holding of *Martinez* is the type of "extraordinary" or

"exceptional" circumstance which warrants Rule 60(b)(6) relief. Magistrate Judge Wier answered both of these questions in the negative.

### A. *Martinez v. Ryan* **is Inapplicable.**

Foley contends that the Magistrate Judge erred in concluding that the Supreme Court's holding in *Martinez* does not apply to Kentucky post-conviction proceedings. [Record No. 132, pp. 2-10] After regurgitating a number of arguments from his previous filings, Foley contends that "*Martinez* is simply not limited to states where effective assistance claims can never, under any circumstances be raised on direct appeal." [Record No. 132, p. 3] Foley argues that *Martinez* applies to his case and that inadequate counsel at an initial post-conviction RCr 11.42 proceeding can "properly excuse a procedural default in [his] federal habeas proceeding." [Record No. 116, p. 5] However, Magistrate Judge Wier correctly adopted a more limited interpretation of the breadth of applicability of the *Martinez* holding, finding that *Martinez* is not applicable to states such as Kentucky that permit a habeas petitioner to raise ineffective-assistance-of-trial-counsel claims on direct appeal.

And while the rule announced in *Martinez* does alter the prior holding in *Coleman*, the Supreme Court decisively limited the scope of *Martinez*, explaining that it is only a "limited . . . qualification" of the *Coleman* rule. *Martinez*, 132 S.Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here."). Additionally, the *Martinez* Court defined "initial-review collateral proceeding" as a collateral proceeding that provides a petitioner the first occasion to raise a claim of ineffective assistance of counsel. *Id.* at 1317. *Martinez* arose from Arizona, which "does not permit a convicted person alleging ineffective assistance

-10-

of trial counsel to raise that claim on direct review." *Id.* at 1313. However, unlike Arizona, in Kentucky, claims of ineffective-assistance-of-counsel can be brought both in a collateral proceeding pursuant to RCr 11.42 or on direct appeal. *See, e.g., Humphrey v. Commonwealth*, 962 S.W.2d 870, 872-73 (Ky. 1998); *Rodriquez v. Commonwealth*, 87 S.W.3d 8, 11-12 (Ky. 2002). Thus, it would appear, as Magistrate Judge Wier found, that the "limited qualification" of *Martinez* does not apply to states such as Kentucky, because prisoners are not required to bring claims of ineffective-assistance-of-counsel only in collateral proceedings and may raise such claims on direct appeal.

While the Court is in agreement with Magistrate Judge Wier's interpretation of *Martinez* and adopts his Recommended Disposition in full, the undersigned notes that since the Supreme Court handed down its decision in *Martinez*, a split of authority has developed in the circuit over whether *Martinez* applies to state cases such as Kentucky's. *See, e.g., Dansby v. Norris*, 682 F.3d 711 (8th Cir. 2012); *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012); *but see Sexton v. Cozner*, 679 F.3d 1150 (9th Cir. 2012); *Leavitt v. Arave*, 682 F.3d 1138 (9th Cir. 2012). However, regardless of whether *Martinez* is applicable to states such as Kentucky, Foley is still unable to meet the requisite burden required by *Martinez* to demonstrate his entitlement to relief, *even if* his claims are not barred.

**B.      Rule 60(b)(6) Relief is Unwarranted.**

Foley also objects to Magistrate Judge Wier's finding that the Supreme Court's holding in *Martinez* is not the type of "extraordinary circumstance" which warrants relief under Rule 60(b)(6). *See Gonzalez*, 545 U.S. at 536. *Martinez* is a change in decisional law concerning

procedural default of ineffective-assistance-of-counsel claims in the context of habeas petitions. And as noted by Magistrate Judge Wier, "[i]t is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *Blue Diamond*, 249 F.3d at 524; *see also Stokes*, 475 F.3d 736; *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012) ("Because the *Martinez* decision is simply a change in decisional law and is not the kind of extraordinary circumstance that warrants relief under Rule 60(b)(6), [petitioner's] 60(b)(6) motion is without merit." (internal quotation marks omitted)). Further, the Supreme Court announced that its ruling in *Martinez* is an equitable ruling which does not rise to the level of a constitutional ruling. *Martinez*, 132 S.Ct. 1309, 1319-20 (2012). The *Martinez* Court explicitly declined to confront the constitutional question left open in *Coleman* of whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial. *Id.* at 1315 (noting that the given the facts presented that "this is not the case . . . to resolve whether that exception exists as a constitutional matter"). Therefore, this change in decisional law does not embody the type of extraordinary or special circumstance that warrants relief under Rule 60(b)(6).

Additionally, Magistrate Judge Wier found that:

Interests in comity and the finality of judgments weigh against reopening Foley's habeas petition. The Court notes that Foley's direct appeal and primary post-conviction proceedings in state court ended more than a decade ago. Further, in federal Court, the District Court denied Foley § 2254 relief eight years ago, in May 2004. The Sixth Circuit affirmed the District Court's decision in May 2007, and, following an unsuccessful petition for a writ of certiorari to the Supreme Court, that decision became final in 2008, four years ago . . .
. . .
The case is long since final . . .
. . .

> The categorical argument and effort Foley makes simply indicates that he is in the same position as any other capital defendant in this context. That does not qualify his scenario as extraordinary.

[Record No. 126, pp. 12-14] The Court agrees and does not find Foley's arguments regarding this issue to be persuasive. Additionally, Foley's underlying claims of ineffective assistance lack merit and do not support the relief sought.

## IV.

*Even if* the holding in *Martinez* applied to Kentucky-based convictions, and *even if* this ruling is the type of "extraordinary circumstance" which merits relief under 60(b)(6), Foley's underlying claims of ineffective-assistance-of-counsel would not warrant the relief sought based on the nature of these claims and the expansive record of this case. Foley cannot show that his claims are substantial as required by *Martinez*. Likewise, he cannot show that he was prejudiced by his post-conviction counsel's alleged errors. Further, the claims which Foley alleges to have been procedurally defaulted due to his post-conviction counsel's alleged ineffective assistance misconstrues the record. Both this Court and the Kentucky Supreme Court reached the merits of Foley's underlying claims which he now argues were procedurally defaulted and thus never considered.

The claims contained in the present Rule 60(b) motion are based on allegations that Foley is the victim of unconstitutional ineffective-assistance-of-counsel committed by two separate attorneys at two separate stages of his case. First, he alleges that his post-conviction counsel's failure to assert that his trial counsel was ineffective for failing to retain a qualified ballistics expert as a violation of federal law provides cause for the default of this claim. Additionally,

-13-

Foley argues that his post-conviction counsel failed to present evidence at his RCr 11.42 hearing on his claims that:

> 1) Trial counsel provided ineffective assistance in failing to seek a mental health exam and determine Foley's competency prior to trial;

> 2) Trial counsel provided ineffective assistance in failing to retain a qualified ballistic expert;

> 3) Trial counsel provided ineffective assistance in failing to impeach the trial testimony of Marge Foley with evidence of her personal relationships with police officers; and

> 4) The prosecutor improperly provided trial witnesses with portions of materials from discovery and used these materials to coach witnesses prior to their testimony.

Foley then asserts that his post-conviction counsel's failure to present evidence on these claims led to them being procedurally defaulted. He contends that the merits of these claims were never heard and that the holding in *Martinez* provides grounds for re-opening his federal habeas proceedings on these five claims. These arguments are without merit and lack substantiality as required by *Martinez*.

## A.    Ineffective-Assistance-of-Counsel

To excuse the procedural default of an ineffective-assistance-of-trial counsel claim, the *Martinez* Court held that:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. To overcome the default, a prisoner must also demonstrate that the underlying

-14-

> ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

132 S. Ct. 1318-19 (internal citations omitted). Thus, to establish ineffective assistance of counsel under *Strickland*, Foley must demonstrate two essential elements: (1) his attorney's performance was objectively deficient, *i.e.*, it fell below the standard of competence demanded of attorneys; and (2) his attorney's deficient performance prejudiced the defense, *i.e.,* it deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *See Strickland v. Washington*, 466 U.S. 668*,* 687–88 (1984); *see also Mallet v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

To establish first prong of the *Strickland* test, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. However, the Court must grant an attorney a good deal of deference in review of that attorney's performance, and "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; *see also Bell v. Cone*, 535 U.S. 685, 698 (2002) ("Judicial scrutiny of a counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (citation and quotation marks omitted)).

Under the second prong of the *Strickland* test, Foley is required to demonstrate that "but for" his post-conviction counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. 466 U.S. at 694. To meet this standard, Foley must show

-15-

that "counsel's errors were so serious as to deprive [him] of a fair trial." *Id.* at 687.  In making this determination the Court looks at the totality of the evidence before the jury. *Id.* at 695.

In short, the Court is required ensure that the defendant has an "effective advocate" in determining a party's claims of ineffective-assistance-of counsel under the Sixth Amendment. *See Wheat v. United States*, 486 U.S. 153, 159 (1988).  Additionally, trial counsel's tactical decisions are particularly difficult to attack and a defendant's challenge to such decisions of his counsel must overcome the strong presumption that the challenged action might be considered sound trial strategy.  *See McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *see also Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).  Further, "a reviewing court does not speculate whether a different strategy might have been more successful, but instead focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009).

### B.     *Wessinger v. Cain*

Foley's objections focus heavily on a decision of a Louisiana district court styled: *Wessinger v. Cain*.  No. 04-637-JJB-SCR, 2012 WL 1752683, slip op. at *1-2 (M. D. La. May 16, 2012).  He argues that *Wessinger* stands for the proposition that "*Martinez* applies to more than just a complete failure to raise a claim in state court; it also applies to a failure to adequately support a claim in the initial state post-conviction proceeding after it is raised."  [Record No. 132, pp. 15-16] Foley asserts that the court records pertaining to his ineffective assistance claims regarding his trial counsel's failure to: 1) obtain a qualified ballistics expert; 2) seek a mental

health evaluation; and 3) sufficiently impeach Marge Foley, are inadequate due to post-conviction counsel's alleged failure to submit additional available evidence. [Record No. 132, pp. 15-16, 18, 21]

In *Wessinger*, the petitioner brought a number of claims seeking relief to alter or amend the court's prior denial of his Section 2254 petition pursuant to Rule 59(e). The *Wessinger* court granted the petitioner's motion only on the issue of whether the court erred in dismissing his claim of ineffective assistance of counsel at the penalty phase of his trial. *See Wessinger*, 2012 WL 1752683 at *1. In support of his ineffective assistance of counsel claim, the petitioner presented additional evidence in the form of: (1) psychiatric evaluation; (2) neuropsychological testing; (3) evidence of low intellectual functioning; and (4) evidence of isolation and abuse. *Id.* at *2. The *Wessinger* Court found that none of this evidence was presented at the petitioner's state habeas proceeding, and that this evidence was "material and significantly different and stronger than what [the petitioner] presented to the state court." *Id.* However, while the *Wessinger* court found *Martinez* to be applicable to the petitioner's ineffective assistance claims, the court concluded that the petitioner was still required to "show that his initial-review counsel was ineffective in prosecuting his ineffective assistance at penalty phase claim, then he must show prejudice. This prejudice prong is satisfied only by showing that, but for the error, he might not have been convicted." *Id.* at *3.

In addition to the fact that *Wessinger* is not binding, it is also distinguishable from the facts of the present case and does not alter this Court's analysis. The Court finds that Foley has not presented nor alleged the existence of evidence which is "material and significantly stronger

-17-

than what he presented to the state court." *Id.* at *2.  Additionally, Foley is unable to show that he has suffered from ineffective assistance of counsel as set out in *Martinez* and *Strickland*, that he was prejudiced, or that his underlying claims of ineffective-assistance-of-trial-counsel were even procedurally defaulted as a result of his post-conviction counsel's performance.  In short, Foley's claims are deficient on a number of grounds.

### 1.    Counsel's Failure to Obtain a Mental Health Examination or Competency Hearing

Foley's post-conviction counsel argued that his trial counsel was constitutionally ineffective for failing to seek a mental health examination or requesting a hearing to determine Foley's competency to stand trial.  Now, Foley alleges that his post-conviction counsel provided unconstitutional assistance by failing to: 1) timely file a motion for expert assistance to perform a mental health evaluation; 2) provide supporting affidavits to properly appeal the denial of that expert by the state court; and 3) introduce supporting medical documentation of alleged brain injury, to properly adjudicate his ineffective-assistance-of-trial-counsel claim on appeal.  [Record No. 116, p. 8; Record No. 132, p. 16]

Additionally, Foley argues that,

> [H]ad his post-conviction counsel obtained available medical records, consulted with an appropriate expert and presented evidence of Mr. Foley's head injuries to corroborate the lay witness testimony offered at the RCr 11.42 hearing, the state post-conviction court would have heard that [Foley's] history of head injuries is a major correlate for impulsive acts, including aggressive and violent behaviors.

[Record No. 132, p. 16]  The petitioner maintains that if his counsel had presented this evidence to the court, "there is a reasonable probability that [the court] would have found he received ineffective assistance of trial counsel." [*Id.*, pp. 16-17]

Foley's present counsel misinterprets the record of this case.  While the Kentucky Supreme Court noted the lack of medical proof supporting Foley's mental health claims, it held:

> It is axiomatic that federal and state law prevent the trial of an incompetent defendant. KRS 504.090; RCr 8.06.  If there are reasonable grounds to believe that a defendant is not competent to stand trial, the proceeding must be discontinued and the trial judge must appoint a psychologist or psychiatrist to examine the defendant, file a report and then a hearing must be held.  KRS 504.100. Here, at the RCr 11.42 hearing, trial counsel testified that Foley assisted him in his defense and that they worked very closely.  The attorney further testified that he did not remember anything that made him think Foley was incompetent during trial and that Foley seemed lucid and was able to converse with him and others. Foley testified in his own defense for over one and one-half hours.  The trial judge had the opportunity to observe that Foley was able to communicate effectively his version of the offense and was able to answer questions both on direct and cross-examination.

> Foley did not testify at his RCr 11.42 hearing.  No medical proof of any mental history was offered to support the claim of incompetency.  The only evidence introduced indicating any bizarre behavior were letters supposedly written by Foley to his deceased grandmother shortly before trial. Although family members spoke of various head injuries suffered by Foley during childhood, no medical records were presented to support such testimony.  Trial counsel testified at the RCr 11.42 hearing that he saw no signs of mental illness and that he had no problem communicating with Foley before and during the trial, and that Foley maintained his own trial folder and discussed it intelligently with counsel.  There was no evidence that Foley was incompetent.  The authorities cited by Foley are unpersuasive.  Trial counsel was not ineffective for declining to request a competency hearing.

*Foley,* 17 S.W.3d at 885-86.

As evinced from the Kentucky Supreme Court's findings, the court assessed the merits of Foley's competency and mental health claims.  Additionally, as pointed out by Magistrate

-19-

Judge Wier, the RCr11.42 court also reached the merits of Foley's mental health claims and specifically assessed his competency proof. [*See* Transcript of the Record on Appeal to the Sixth Circuit, Vol. 36, at 1026.]

On review of Foley's § 2254 petition, Magistrate Judge Johnson also reached the merits of Foley's alleged ineffective-assistance claim regarding his mental health. [Record No. 63, pp. 25-28] As Magistrate Judge Johnson correctly and repeatedly pointed out, Foley had not given his trial counsel any reason or indication to think that a mental or physical evaluation for alleged brain injury was necessary or advisable. The Magistrate Judge noted that:

> Foley was not a "marginal" individual with low intelligence, retardation, or other apparent mental deficits. On the contrary, the record reflects that Foley was quite intelligent and had been fully involved in assisting his own defense. He had no history of mental illness. He was married and had been operating his own trucking company. Counsel may make a reasonable decision that further investigation is not necessary . . . Counsel had no reason to think that investigation of childhood medical records would produce any useful information. Foley had regularly assisted his counsel in his defense and even maintained his own file of the case. At trial, Foley personally testified for several hours, gave his version of events, and was able to answer cross-examination questions.

[Record No. 63, pp. 25-26]

Thus, despite the lack of corroborating medical records to support Foley's claims of mental health issues, the Court analyzed Foley's claim of ineffective-assistance-of-counsel on this issue. The record is thorough in describing the courts' reasoning in concluding that Foley's trial counsel did not provide him with unconstitutional ineffective assistance and that given the totality of circumstances, Foley's trial counsel actions did not fail to meet the standards set out in *Strickland*. Simply put, the Court reached the substance of Foley's competency claims, and found that them to be without merit.

-20-

Additionally, to the extent the Court did consider this issue to have been procedurally defaulted due to a lack of evidence presented at the state level, Foley has not made a sufficient showing under *Martinez* to justify reopening this claim. Foley cannot show that he was prejudiced and he cannot make a showing that but for post-conviction counsel's alleged errors there is a reasonable probability he would have received relief for his ineffective-assistance-of-trial-counsel claim. The record of this case is replete with findings that neither trial counsel nor the trial court had reason to believe that Foley was mentally impaired. In fact, the evidence strongly indicates just the opposite. Foley, therefore, cannot meet the requisite showing of substantiality as required by *Martinez*.

To the extent Foley has attached copies of medical records to his Objections as exhibits, these exhibits do not change the Court's opinion on this matter. Even if the Court were to accept this evidence,[8] it is neither material nor significantly stronger than what Foley presented to the state court. Further, Foley has failed to demonstrate that the trial court at his RCr 11.42 hearing

---

8       Foley has attached a smattering of medical records as exhibits to his Objections. [Record Nos. 132-1, 132-2, 132-3] He alleges these medical records were available and should have been presented at his RCr 11.42 hearing by his post-conviction counsel. [Record No. 132, p. 15, n. 3] The records indicate that: (1) in February 1991 he was in a car accident "in which his car flipped and he ended up in the back seat of the car;" (2) in May 1991, Foley was admitted to the emergency room after his legs went numb while attempting to push a car, and the emergency room doctor noticed an abrasion on his forehead, but, Foley left before the Doctor could fully exam him. [*Id.*] Additionally, Foley alleges that he:

> reported symptoms consistent with overexposure to toxins such as the industrial degreasers he commonly used. During the time when Bob was exposed to industrial degreasers, TCE was commonly used in such substances. Long-term, repeated exposure to TCE can lead to damage to the central nervous system, including fatigue, sleeplessness, poor coordination, difficulty in thinking, loss of short-term memory, and personality changes such as depression, anxiety, and irritability.

[*Id.*] Any probative value this evidence would have to substantiate a lack of mental competency is minimal, at best, and certainly is not sufficient to warrant reopening this claim under *Martinez*.

-21-

would have ruled differently on this issue but for his counsel's alleged failure to present this evidence.

### 2.      Failure to Obtain a Qualified Ballistic Expert

Following Foley's conviction in state court, his post-conviction counsel argued that his trial counsel was ineffective for failing to call a qualified ballistic expert at trial.  In his habeas petition, Foley argued that his main defense at trial was that he acted in self-defense in killing Rodney Vaughn and that Rodney killed his own brother, Lynn Vaughn.  Foley avers that central to this defense was proof of the trajectory and irregularity of bullet holes found at the scene of the crime.  Foley called Pershing Hayes as a expert witness to testify concerning ballistics issues during trial.  The trial court refused to recognize Hayes as an expert.  However, the witness was permitted to testify regarding his findings.  In his habeas petition, Foley argued that his trial counsel was unconstitutionally ineffective for depending upon a non-expert to testify regarding such critical evidence of Foley's defense.  But much like Foley's other habeas claims, both Magistrate Judge Johnson and this Court found this argument to be meritless.

Foley now contends that his post-conviction counsel was ineffective in advocating Foley's claim of his trial counsel's ineffectiveness on this issue.  Foley asserts that his post-conviction counsel failed to allege Foley's ineffective-assistance-of-trial-counsel claim regarding his failure to obtain a ballistic expert *as a violation of federal law*, and that this prevented Foley from raising this issue in his federal habeas case.  Additionally, Foley alleges that his post-conviction counsel was ineffective because he waited until three days before his RCr 11.42 hearing to retain a ballistics expert, and because his counsel did not seek a ruling on a motion

for expert funding before the scheduled hearing.  [Record No. 132, p. 17]  Finally, Foley argues that when his post-conviction counsel's motion to continue the RCr 11.42 hearing was denied, his attorney failed to proffer an affidavit from either himself or the expert concerning the expert's proposed testimony.  [Record No. 116, p. 11]

Foley contends that, due to these alleged failures of his post-conviction counsel, his "federal claim based on adequate evidence was defaulted by his post-conviction counsel's ineffectiveness."  [Record No. 132, p. 17-18] Relying on *Wessinger,* 2012 WL 1752683, Foley maintains that:

> *Martinez* applies to more than just a complete failure to raise a claim in state court; it also applies to a failure to adequately support a claim after it is raised. As the record on this matter was inadequate due to post-conviction counsel's deficient performance, *Martinez* permits this Court to re-open this claim.

[Record No. 132, p. 18]  Foley makes the conclusory assertion that "[h]ad [he] had a qualified expert who could review and analyze the physical evidence and testify before the jury as an expert — and had [his] post-conviction counsel retained such an expert for his RCr 11.42 hearing — the result of [his] trial and/or RCr 11.42 motion would have been different."  [*Id.*, p. 12]

As thoroughly discussed in Magistrate Wier's Recommended Disposition, both this Court and the Kentucky Supreme Court found that Foley did not procedurally default his claim that his trial counsel was ineffective for failing to obtain the services of a qualified ballistics expert. [Record No. 126, pp. 20-25]  The Kentucky Supreme Court specifically found that "[t]he ballistic expert used by the defense was allowed to testify and was extensively cross-examined at trial.  The trial court was correct in finding there was no ineffective assistance of counsel in

-23-

this respect."[9]  *Foley*, 17 S.W.3d at 886.  Additionally, this Court, in adopting Magistrate Judge Johnson's R&R regarding Foley's § 2254 petition, reached the substance of Foley's arguments on his trial counsel's failure to call a qualified ballistics expert and found Foley's claims on this issue to be without merit.  Moreover, to the extent that this claim has been procedurally defaulted, the Court has already considered the merits of this argument.  Foley has failed to show any basis to reconsider the Court's prior decision on this issue.

Further, even if the Court were to assume that Foley's post-conviction counsel was ineffective regarding his alleged failure to obtain a qualified ballistics expert, Foley cannot demonstrate that his underlying ineffective-assistance-of-counsel claim is substantial, nor can he demonstrate that, had a ballistics expert testified at his RCr 11.42 hearing, the outcome would have been different.  Again, although Foley has presented an affidavit of an alleged ballistic expert as an exhibit to his objection, this does not change the Court's finding that Foley's claims regarding this issue are without merit.[10]

---

9        As set forth in the Recommended Disposition,

> [I]n its review of Foley's 11.42 motion, the Kentucky Supreme Court noted that Foley had no constitutional right to expert assistance in a collateral attack proceeding, and the court further stated that Foley had not shown that the expert he contacted for the 11.42 hearing was reasonably necessary or could change the jury verdict.  Thus, it appears unlikely that Foley could demonstrate that post-conviction counsel's performance was deficient, or that post-conviction counsel's deficient performance resulted in prejudice.

[Record No. 126, p. 24 n. 13 (citing *Foley,* 17 S.W.3d at 887)]

10       As an exhibit to his objections, Foley presents what is allegedly an affidavit from a ballistics expert. [Record No. 132-4]  Foley claims that the expert's findings, "based on a limited review of the record, support [Foley's] contention that Rodney Vaughn was holding a weapon when he was shot, and indicate that both the wounds to Lynn Vaugh and that the bullet holes in the living room wall were consistent with [Foley's] trial testimony."  [Record No. 132, p. 18, n. 4]  Even if the Court were to accept this evidence and apply the standard set out in *Wessinger*, this does not constitute new or significantly stronger evidence than what Foley presented at his trial.  Foley is unable to demonstrate that, but for his counsel's alleged failure regarding this

### 3.      Failure to Sufficiently Impeach Marge Foley

Foley's post-conviction counsel asserted a claim that Foley's trial counsel provided ineffective assistance of counsel because he did not adequately impeach Foley's wife, Marge Foley, with a letter she purportedly wrote to Foley discussing certain relationships with Kentucky state police officers.  Foley argues that neither the Kentucky Supreme Court on his RCr 11.42 appeal nor the Magistrate Judge on his federal habeas petition were able to truly evaluate his claim because "post-conviction counsel had failed to present any evidence that trial counsel knew of the impeachment evidence at the time of trial and had failed to authenticate or introduce a letter from Marge Foley."  [Record No. 132, p. 21]  Foley asserts that "[d]ue to the initial post-conviction counsel's failure to avail himself of the opportunity to present evidence at an evidentiary hearing, Mr. Foley was barred from fully asserting this claim in federal habeas."  [*Id.*]

Foley's arguments on this claim do not justify relief.  Further, the petitioner misconceives Magistrate Judge Wier's findings.  On this issue, the Kentucky Supreme Court found that,

> An examination of the record does not indicate any testimony that the trial attorney was made aware of an alleged letter from Foley's wife to the defendant prior to trial.  The letter indicated that she became pregnant by a state police officer and that another police officer had given her money.  Obviously, defense counsel did not cross-examine her about the letter or about her relationships with either of the two police officers.  Foley does not state when he received the letter, nor does he indicate when trial counsel became aware of the letter during trial. Foley, who testified in his own defense, made no mention of the facts that the now argues.  Trial counsel cross-examined Foley's wife concerning pending criminal charges against her and the fact that she had unresolved custody litigation.  At trial, Foley testified that his wife was "a dopehead and a whore." The trial judge correctly found that Foley did not assert that he made trial counsel

issue, the outcome of his prior proceedings would have resulted in a different outcome.

aware of the purported letter or that he asked trial counsel to question his wife about the alleged letter. Foley did not testify at the RCr 11.42 hearing. In attempting to obtain post-conviction relief, the movant must present facts with sufficient particularity to generate a basis for relief.

The trial judge correctly found that Foley did not assert that he made trial counsel aware of the purported letter or that he asked trial counsel to question his wife about the alleged letter. Foley did not testify at the RCr 11.42 hearing.

In attempting to obtain post-conviction relief, the movant must present facts with sufficient particularity to generate a basis for relief . . . There is no showing that the alleged errors of defense counsel were so serious that the result of the trial was unreliable.

*Foley*, 17 S.W.3d at 889-90 (internal citations omitted).

Additionally, Magistrate Judge Johnson found that "[e]ven if counsel had pursued a particular line of questioning to further impeach Marge Foley, the specific points that petitioner speculates would have been brought out would not warrant habeas relief." [Record No. 63, p. 104] Magistrate Judge Johnson analyzed Foley's claim in accordance with the *Strickland* test, and found that there was no reasonable probability that cross-examining Marge Foley with this letter would have produced a different verdict, and that Foley's claim was a "classic case of second guessing, an argument which cannot succeed under the *Strickland* test and its deferential review of attorney performance." [*Id.*]

Further, in adopting Magistrate Judge Johnson's R&R, this Court noted that "Foley participated in his own defense and his attorney had no reason to suspect that he would withhold useful information. However, even if he had introduced this evidence, the benefit for Foley would have been minor and no prejudice resulted." [Record No. 69, p. 26]

-26-

Despite these findings, Foley asserts that his "federal claim [is] based on adequate evidence [and] was defaulted by his post-conviction counsel's ineffectiveness." [Record No. 132, p. 21] He again argues that "*Martinez* applies to more than just a complete failure to raise a claim in state court; it also applies to a failure to adequately support a claim after it is raised." [*Id.*] Further, he concludes that "[h]ad post-conviction counsel shown that [Marge Foley's] trial testimony could have been severely impeached by trial counsel, the state post-conviction court would have found ineffective assistance of trial counsel." [*Id.*, p. 22]

Again, Foley distorts the courts' findings, and his arguments concerning this claim do not warrant relief. As noted by Magistrate Judge Wier, even though the Kentucky Supreme Court found that Foley did not present a sufficient factual basis to substantiate his ineffective assistance of counsel claim, "at the same time the court suggested that trial counsel did not provide deficient performance by failing to use the letter purportedly sent to Foley by his estranged wife for impeachment purposes." [Record No. 126, p. 28] It is even more dispositive that Magistrate Judge Johnson and this Court analyzed Foley's alleged ineffective assistance claim pertaining to this letter. What was true in 2004 when this Court first heard Foley's claim of trial counsel's alleged ineffective assistance for failure to impeach Marge Foley with this letter remains true today: even if Foley's counsel did introduce this evidence, its benefit would have been minimal and no prejudice resulted.

The Court is in agreement with Magistrate Judge Wier on this issue. To the extent this claim was procedurally defaulted, and assuming the ineffectiveness of Foley's post-conviction counsel, there is no basis to reopen the judgment. In summary, Foley's underlying ineffective

assistance claim is not substantial and there is no reasonable probability that a effective presentation of the claim by post-conviction counsel would have resulted in a different outcome in his RCr 11.42 proceeding.  [Record No. 126, p. 28]

### 4.    Failure to Produce Evidence of Prosecutorial Misconduct

Finally, Foley argues that his post-conviction counsel rendered ineffective assistance by failing to present evidence to support his claim that the prosecutor improperly coached and provided witnesses with discovery materials before their testimony.  He asserts that "the logic of *Martinez* applies equally to a claim of prosecutorial misconduct that was defaulted because of ineffective post-conviction counsel."  [Record No. 132, p. 19] And Foley contends that, because his post-conviction counsel did not "avail himself of the state procedure for identifying [the] missing witness" or request a continuance, his attorney "failed 'to bring such skill and knowledge as will render the [hearing] a reliable adversarial testing.'"  [Record No. 132, p. 20 (quoting *Strickland*, 466 U.S. at 688)]

This objection is also without merit.  As noted by Magistrate Judge Wier, the holding of *Martinez* is limited to post-conviction counsel's conduct in initial-review collateral proceedings which may excuse the procedural default of ineffective-assistance-of-trial-counsel claims.  While Foley urges the Court to extend the limited scope of *Martinez* to provide relief of defaulted claims of prosecutorial misconduct, the undersigned declines to adopt this overly-expansive reading of the case.  *Martinez* is limited to procedurally defaulted claims of ineffectiveness of *trial counsel*, not defaulted claims of prosecutorial misconduct.  *Martinez* does not provide Foley grounds for relief on this claim.

-28-

## V.

Foley is not entitled to a Certificate of Appealability on any issue raised through the present motion.  A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), "a petitioner who has been denied relief in a district court 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (emphasis and brackets in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  In the present case, Foley has not made a substantial showing of a denial of a constitutional right.  Likewise, he has not demonstrated that the issues he now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further.

## VI.

Numerous courts, including this Court, have already reached the substance of Foley's predicate claims of ineffective-assistance-of-trial-counsel and have resoundingly found that they lack merit.  To the extent that this Court previously deemed these claims to have been procedurally defaulted by the alleged errors of Foley's post-conviction counsel, they do not meet the substantiality requirement of *Martinez*.  Additionally, the Court does not find that, but for the alleged ineffective assistance of counsel, the outcome of Foley's proceedings would have been any different.  Having again examined the record, and having made a *de novo* determination

on the matters to which Foley objects, the Court is in full agreement with the Magistrate Judge

Wier's findings and recommendations.  Accordingly, it is hereby

        **ORDERED** as follows:

        1.      Petitioner Robert C. Foley's Motion for Relief from and to Re-open Judgment

Pursuant to Federal Rule of Civil Procedure 60(B) [Record No. 116] is **DENIED**.

        2.      The Magistrate Judge's Recommended Disposition [Record No. 126] is

**ADOPTED** and **INCORPORATED** by reference.

        3.      Petitioner Robert C. Foley's Objections to Magistrate's Recommended

Disposition [Record No. 132] are **OVERRULED**.

        4.      All other pending motions in this case [Record Nos. 127, 133, 137] are **DENIED**,

as moot.

        5.      This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

        This 30th day of January, 2013.



Signed By:

*Danny C. Reeves*  DCR

United States District Judge