UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ROBERT C. FOLEY, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 00-552-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RANDY WHITE, Warden of Kentucky | ) | **MEMORANDUM OPINION** |
| State Penitentiary, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is currently pending for consideration of Petitioner Robert C. Foley's motion to alter and amend the Court's January 30, 2013 Memorandum Opinion and Order which denied Foley's motion for relief under Rule 60(b) of the Federal Rules of Civil procedure. [Record No. 138] In that opinion, the Court also denied the petitioner's motion to Supplement/Amendment to Petitioner's Motion for Expert Funding [Record No. 127] and Motion for Expert Funds to Retain a Neuropsychologist for Clemency [Record No. 133] as moot. [Record No. 138, p. 30] Foley now seeks to have the Court alter or amend the opinion pursuant to Rule 59(e) of the Rules of Civil Procedure.[1] [Record No. 139] In support, he argues his motions for clemency funding for a ballistics expert and neuropsychologist are separate and distinct issues than his motion seeking Rule 60(b) relief. [Record No. 139] Respondent Warden Randy White has filed

---

1    Rule 59(e) of the Rules of Civil Procedure provides: "(e) Motion to Alter or Amend a Judgment.  A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

a response [Record No. 140] and the petitioner has filed a reply. [Record No. 141] For the reasons explained below, the Court will grant the petitioner's motion to alter and amend the Court's prior ruling. [Record No. 138] However, the Court will deny his motions for expert funding for a ballistics expert and neuropsychologist for his anticipated clemency hearing.

## I.

The Court incorporates by reference its earlier discussion of the procedural background relating to the Foley's conviction and two death sentences, and his various appeals and motions for reconsideration. [Record No. 138, pp. 2-5] Foley is currently on death row serving two death sentences for murdering Rodney and Lynn Vaughn.[2] *See Foley v. Commonwealth*, 942 S.W.2d 876, 879-88 (Ky. 1996). Having exhausted his habeas proceedings, and this Court having found his 60(b) motion to be without merit [Record No. 138], Foley has begun work on a petition for clemency from his death sentences for killing the Vaughn brothers. In preparation for this anticipated petition, Foley seeks funding for a ballistics expert and a neuropsychologist. [Record Nos. 133, 89, 127]

On March 19, 2010, Foley filed a motion to expand the appointment of counsel to pursue state clemency [Record No. 90], and a motion for expert funds to obtain an expert in crime scene reconstruction and ballistics. [Record No. 89] After both of these motions were fully briefed, Magistrate Judge Wier entered an Order granting Foley's motion to expand appointment of counsel to the extent it seeks authorization for appointed counsel to pursue state clemency [Record No. 102, p. 5], and denying his motion for approval of expert funds. [*Id.*, p. 10] Foley

---

2       Foley is also currently subject to four other death sentences which are not before this Court.

timely filed objections to the Order pertaining to the denial of expert funding [Record No. 110], and the respondent timely filed objections to the expansion of counsel. [Record No. 111] Both parties filed responses to the other's objections. [Record Nos. 112, 115]

Also before the Court are Foley's motion to supplement and amend his original motion requesting funding for a ballistics expert [Record No. 127], and his motion seeking funding for a neuropsychologist. [Record No. 133] Both of these motions have been fully briefed. The Court, therefore, will now consider: (1) whether this Court has jurisdiction to grant Foley's request for the expansion of counsel for the purposes of his state clemency, and (2) whether Foley's requests for expert funding should be granted pursuant to Section 3599 of Title 18 of the United States Code. 18 U.S.C. § 3599.

## II.

The respondent has objected to Magistrate Judge Wier's order granting Foley's motion for expansion of appointment of counsel to pursue state clemency pursuant to Section 3599. [Record No. 102] Magistrate Judge Wier's Order, in part, granted Foley's motion to expand his representation to include attorney Meggan Smith, who is employed by the Kentucky Department of Public Advocacy ("Kentucky DPA"), and to terminate the representation of inactive counsel Timothy T. Riddell, one of Foley's two federally appointed Section 2254 attorneys.[3] [*Id.*, p. 5]

---

3       On January 25, 2001, Foley's motion for appointment of counsel was granted to pursue his habeas petition in federal court. [Record No. 17] Attorneys Milton Coburn Toby and Timothy T. Riddell were appointed as counsel for Foley. [*Id.*] Foley's habeas petition has been rejected in full by the federal courts. However, the record of this case indicates that Toby is still active. [Record No. 88, p. 1 ("Mr. Toby will continue as counsel for Petitioner.")]

Foley is currently represented by Milton Coburn Toby, one of his original federally-appointed habeas attorneys, and Meggan Smith.

In his objections [Record No. 111], the respondent simply reiterates his arguments which Magistrate Judge Wier previously found to be without merit when he granted Foley's motion to expand appointment of counsel. [Record No. 102] The respondent argues that this Court lacks jurisdiction to expand the appointment of counsel for Foley's state clemency petition. [Record No. 111, p. 3; Record No. 140, pp. 2-3] Specifically, the respondent argues that Magistrate Judge Wier impermissibly extended the holding of *Harbison v. Bell*, 556 U.S. 180 (2009), to apply to states such as Kentucky that provide appointed counsel for the purposes of pursuing clemency. [Record No. 111, p. 3] Additionally, the respondent argues that the petitioner's motions for expert funding are based upon a presumed assumption that he is entitled to an expansion of appointment of counsel, and that "only if an expansion of appointment of counsel is granted may the Petitioner possibly be entitled to funds per 18 U.S.C. § 3599." [Record No. 140, p. 2] Thus, the respondent contends that if the Court sustains the respondent's objections and denies Foley's motion to expand appointment of counsel then all issues herein will become moot. [*Id.*, p. 3]

In *Harbison*, the Supreme Court held that Section 3599 authorizes counsel appointed to represent a state petitioner in a Section 2254 proceedings to represent him in subsequent state clemency proceedings. 556 U.S. at 183. The Supreme Court opined that "under a straightforward reading of the statute, subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at

185.  Under section 3599, once appointment occurs in the context of the statute, then "each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings . . . and shall also represent the defendant in . . . proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e).  The Court held that "[b]ecause state clemency proceedings are 'available' to state petitioners who obtain representation pursuant to subsection (a)(2), the statutory language indicates that appointed counsel's authorized representation includes such proceedings." *Harbison*, 556 U.S. at 186.  Thus, section 3599 provides for federal funding for appointed counsel in state clemency proceedings in the following limited circumstances: "(1) the defendant must have sought to set aside his death sentence under 28 U.S.C. § 2254; (2) the defendant must continue to be indigent; and (3) counsel appointed to represent the defendant in a § 2254 proceeding must continue to represent the defendant in state clemency proceedings." *Baze v. Parker*, No. 01-31-ART, 2012 U.S. Dist. LEXIS 54401, at *2 (E.D. Ky. Apr. 18, 2012) (citing 18 U.S.C. § 3599(a)(2), (e); *Harbison*, 556 U.S. 183-86).

Additionally, the *Harbison* Court weighed the issue of unavailability of counsel to a petitioner and considered whether state law provided for counsel under these circumstances.  The Court specifically noted that Tennessee state law did not provide petitioners with a right to appointment of state public defenders for the purpose of pursuing state clemency.  *See Harbison*, 556 U.S. at 182-83.  Moreover, the Court opined that "subsection (a)(2) provides for counsel only when a state petitioner is unable to obtain adequate representation." *Id.* at 189.  Therefore,

it would appear, and Foley has conceded, that *Harbison* would be inapplicable if the petitioner had a right to state appointed counsel under Kentucky Law.  [Record No. 141, p. 2]

The respondent argues that since Kentucky law authorizes the Kentucky DPA to represent death row inmates in their state clemency proceedings, the Court lost its jurisdiction to expand the appointment of counsel once denial of Foley's habeas action became final.  Specifically, the respondent argues that "pursuant to KRS 31.030(9), the Kentucky Department of Public Advocacy has legal authority 'to pursue legal, administrative, and other appropriate remedies' for condemned inmates, including the preparation and filing of state clemency petitions" and that "KRS 31.030(9)[4] negates the need for expansion of the appointment of counsel herein for purposes of filing a state clemency petition and . . . removes the basis for appointing counsel per *Harbison v. Bell*."  [Record No. 140, pp. 2-3]

It is uncontested that the Kentucky DPA has authority to represent petitioners in state clemency proceedings.  However, the respondent has failed to provide authority that Kentucky law provides petitioners with a *right* to state-appointed counsel, and the Court has been unable to find any.  While ultimately holding that this issue was not dispositive of Foley's motion, Magistrate Judge Wier correctly noted that

> [t]he parties hotly contest the DPA's duties, and information in the enabling statute cuts both ways.  *See* Ky. Rev. Stat. Ann. § 31.110(1)(c) (noting right to counsel, for a "needy person" under conviction ". . . in any other post-conviction . . . proceeding that the attorney and the needy person considers appropriate"); *id.* at (1)(a) (suggesting right to appointed counsel coterminous with underlying constitutional right to counsel).  These sections raise doubt about whether Foley

---

4       Section 31.030 of the Kentucky Revised Statutes ("KRS"), lays out "the authority and duties of the Department of Public Advocacy."  This statute enumerates what the Kentucky DPA is authorized to do; however, it does not confer any "right" of state-appointed counsel upon a petitioner.  *See* KRS § 31.030.

would have the "right" to appointed state counsel, regarding clemency, as a state law matter.

[Record No. 102, p. 5 n. 4]

The Court agrees that the respondent's arguments on this issue are misplaced.[5]  *See cf. Irick v. Bell*, 636 F.3d 289, 291 (6th Cir. 2011) (affirming the district court's decision granting the petitioner's request for federal funding pursuant to section 3599 for purposes of state clemency proceeding, but denying funding for other certain state proceedings, because "[w]e decline to obligate the federal government to pay for counsel in state proceedings where the state itself has assumed that obligation" and "[u]nlike the clemency proceeding at issue in *Harbison*, state does authorize, and indeed requires, appointment of counsel in the types of proceedings for which Irick seeks federally appointed counsel.  Under Tennessee law, [petitioner] has a right to appointed counsel"); *see also Sanborn v. Parker*, Civil Action No. 3: 99-678-JBC (W.D. Ky.), and *Matthews v. Parker*, Civil Action No. 3: 99-91-JGH, Record No. 274 (W.D. Ky.) (both courts recognizing *Harbison's* applicability to counsel from the Kentucky DPA's office and appointing Kentucky DPA attorneys to pursue state clemency proceedings).  Thus, the Court finds that Magistrate Judge Wier's May 10, 2010 Order, granting expansion of appointment of counsel was not in error, and that this Court  has jurisdiction to appoint counsel for the limited purpose of representation during Foley's state clemency proceeding.

---

5       The Court overrules the respondent's objections to Magistrate Judge Wier's Order [Record No. 111], on the merits, for the reasons stated above.

## III.

Having decided the unresolved threshold issue that Foley is entitled to an expansion of appointment of federally-funded counsel for the narrow purpose of representation in his anticipated clemency hearing, the Court next addresses whether Foley is entitled to federal funding to retain the services of experts. As discussed above, in *Harbison* the Supreme Court held that "[Section] 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." 556 U.S. at 194. Courts have extended the Supreme Court's "straightforward reading" of Section 3599 to include the federal financing of experts for a petitioner's state clemency hearing, pursuant to Section 3599(f). Section 3599(f) states, in relevant part:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses . . . .

18 U.S.C. § 3599(f).

Section 3599 provides for federal funding for the costs of experts if the Court finds them to be "reasonably necessary for the representation of the defendant." 18 U.S.C. § 3599(f); *see also Baze v. Parker*, 632 F.3d 338, 343-44 (6th Cir. 2011). Further, the decision to grant expert funding is reviewed for abuse of discretion. *See Fautenberry v. Mitchell*, 572 F.3d 267, 268-69 (6th Cir. 2009). It is, therefore, within the district court's discretion to determine whether the petitioner "has not demonstrated that funds are reasonably necessary, and to deny a request for funding as a result, where the petitioner's request is based on mere suspicion and surmise."

*Fautenberry v. Mitchell*, No. 1:00-cv-332, 2009 U.S. Dist. LEXIS 66764, at *5 (S.D. Ohio July 11, 2009), *aff'd*, 571 F.3d 1341 (6th Cir. 2009) (internal quotation marks omitted) (citing *Patrick v. Johnson*, 48 F. Supp. 2d 645, 647 (N.D. Tex. 1999); *Bell v. True*, 366 F. Supp.2d 403, 408 (W.D. Va. 2005) (denying request for funds where services would be duplicative and amount to a fishing expedition); *Delong v. Thompson*, 790 F. Supp. 594, 616-17 (E.D. Va. 1991) (denying request for funds where proposed investigation constituted a "fishing expedition")). This determination is fact-specific and should be analyzed on a case-by-case basis. *See id.* at *4; *see also Cooey v. Strickland*, No. 2:04-cv-1156, 2010 U.S. Dist. LEXIS 36721, at *10-11 (S.D. Ohio Apr. 7, 2010).

There is little case law which explicitly defines "reasonably necessary" under Section 3599 in the context of clemency hearings. *See Cooey*, 2010 U.S. Dist. LEXIS 36721, at *11; *see also Foust v. Houk*, No. 1:06-CV-2625, 2008 U.S. Dist. LEXIS 3023, at *12 (N.D. Ohio Jan. 15, 2008) ("Although there are few cases defining when appointment of experts is 'reasonably necessary,' the request must elucidate some factual allegation of a claim yet unexplored."). However, it is clear that expert services are deemed reasonably necessary when "a substantial question exists over an issue requiring expert testimony for its resolution and the [petitioner's] position cannot be fully developed without professional assistance." *Foust,* 2008 U.S. Dist. LEXIS 3023, at *12 (internal quotation marks and citations omitted) (examining the meaning of "reasonably necessary" under § 3599(f) in the context of habeas proceedings). Short of this point, however, the definition of "reasonably necessary" is more ambiguous.

-9-

It is instructive to look to the purpose of clemency hearings in defining what is meant by "reasonably necessary."   Clemency proceedings provide a final opportunity to review a petitioner's conviction and sentence and act as a "fail safe" of our criminal justice system.  *See Herrera v. Collins*, 506 U.S. 390, 415 (2003).  Further, while section 77 of the Kentucky Constitution governs clemency hearings in Kentucky, under Kentucky law "no [clemency] procedures are even arguably mandated."  *Baze v. Thompson*, 302 S.W.3d 57, 60 (Ky. 2010) (quoting *In re Sapp*, 118 F.3d 460, 465 (6th Cir. 1997) (abrogated on other grounds by *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007)).  "There exist only two constitutionally-mandated requirements under Section 77: that the movant file an application for clemency with the Governor; and that the Governor file with each application a statement of the reasons for his decision."  *Id.*  Thus, in Kentucky, "the decision to grant clemency is left to the unfettered discretion of the Governor."  *Id.*  The Governor is allowed to hear or ignore evidence as he chooses, and a petitioner does not have any right to present expert evidence.  *Id.* (noting that aside from the requirements of Section 77, "no other constitutional provision or statute establishes specific procedures to be followed or imposes standards or criteria for the clemency decision").

### A.    Request for Funding for Neuropsychologist

On December 6, 2012, Foley filed a Motion for Expert Funds to Retain a Neuropsychologist for Clemency.  [Record No. 133] The petitioner argues that he "requires the assistance of a neuropsychologist in order to support his anticipated request for clemency," which he contends he is entitled to under Section 3599(f).  [*Id.*]  However, the respondent argues

-10-

that Foley's request for funding for a neuropsychologist is not "reasonably necessary." [Record No. 135]  He contends that Foley's request for funds is nothing more than a fishing expedition. [*Id.*, p. 4]  Specifically, the respondent asserts that Foley's motion is "long on a history of alleged head trauma[,] [b]ut it is short on any diagnosis of or treatment for neuropsychological disorder or condition." [*Id.*]  The respondent notes that Foley neither attaches any prison medical records for treatment of any neuropsychological disorder or condition nor states how any of these alleged head injuries affect his day-to-day behavior.  [*Id.*]

Conversely, Foley contends that his request is reasonably necessary to "show the effects of multiple head injuries suffered throughout his life" which are documented by his medical records.  [Record No. 133, p. 4]  Specifically, he alleges that these documented head injuries include incidents

> [i]n February 1991, [when] Mr. Foley was involved in a single vehicle car accident in which his car flipped over and he ended up in the back seat of the car. In May 1991, Mr. Foley was admitted to the emergency room after his legs went numb while trying to push a car. Mr. Foley had an abrasion on his forehead and the doctor was concerned that he might have a closed head injury. Mr. Foley signed out of the emergency room, against medical advice, before further testing and treatment was provided.

[Record No. 133, p. 4 (internal citations omitted)]  Foley also argues that he "has suffered other head injuries that are not documented in medical records, either because medical treatment was not sought or because the records have been destroyed due to their age." [*Id.*]  Foley attaches the affidavits and testimony transcripts from Laurel County of his mother and brother, as proof

of these undocumented head injuries.[6]  [Record Nos. 133-1 through 133-4]  Specifically, Foley

alleges that these undocumented head injuries include incidents such as

> [w]hen his umbilical cord fell off, his mother, not understanding what had
> happened, threw him across the room where he hit his head on a chair. When Mr.
> Foley was approximately four (4) years old, he fell off of a chair, through a
> window, and hit his head.  When he was seven (7), he fell from a moving car and
> hit his head.  During his first year of high school, Mr. Foley was hit between the
> eyes with a baseball and was knocked out.  Even though he felt dizzy for three
> days afterwards, Mr. Foley was not taken to the doctor because his family did not
> have money and Sam Pennington, Mr. Foley's grandfather, did not believe in
> doctors.  Mr. Foley's brother, Ted Foley, hit him in the head with a baseball bat
> once and knocked him out. When he was seventeen (17), Mr. Foley was thrown
> from a horse and struck his head. At the age of nineteen (19), Mr. Foley was in
> a car accident where the car he was driving was "demolished." The car left the
> highway, traveled about 200 feet, hit a tree and continued for another 150 feet
> before striking another car.[7]  None of these head injuries or their effects on Mr.
> Foley's cognition and behavior have been explored through a neuropsychological
> examination.

[Record No. 33, pp. 4-5]

Foley argues that his history of head injuries likely explains his criminal behavior, and

that head injuries can "lead to permanent brain damage, which can cause emotional dullness,

restless or aggressive characteristics, impulsiveness, temper outbursts, markedly diminished

impulse control, impaired social judgment, and transient outbursts of rage which are totally

---

6       Foley has also attached an undated newspaper article, titled "Three Persons Hurt in Wrecks," as
evidence of an alleged head injury.  [Record No. 135-5] The article states that after Foley was charged with
driving while intoxicated, reckless driving, and assault in the third degree, Foley was treated and released at
Harlan Appalachian Regional Hospital.  [*Id.*, p. 2]  Additionally, Foley has appended a copy of a Kentucky
Department of Corrections medical personnel report documenting a fall Foley took in February 2011, as
evidence of another alleged head injury.  [Record No. 133-6]

7       As evidence of this car accident, Foley has attached a copy of a newspaper article titled "Three
Persons Hurt in Wreck."  The article states that after Foley was charged with driving while intoxicated,
reckless driving, and assault in the third degree, Foley was treated and released at Harlan Appalachian
Regional Hospital.  [Record No. 133-5, p. 2]

inconsistent with his normal behavioral pattern." [Record No. 136, pp. 3-4 (internal quotation marks omitted) (citing *Jefferson v. Upton*, 130 S. Ct. 2217, 2218 (2010))] In short, Foley contends that a neuropsychological exam will help determine whether his behaviors are the effects of brain damage resulting from his alleged head traumas, and that a medical conclusion that he suffers from brain impairment is relevant to the Governor's clemency determination. [*Id.*, p. 4]

Foley relies on *Sanborn v. Parker*. No. 99-678-C, 2011 U.S. Dist. LEXIS 142519 (W.D. Ky. Dec. 12, 2011) as support for his position. Sanborn, a death row convict who had exhausted all potential judicial remedies, requested funding for a neuropsychological evaluation and brain scan in support of his petition for clemency, pursuant to § 3599 (f). The *Sanborn* court ultimately found that, under the circumstances presented, his request for funding was "reasonably necessary to ensure that the Governor of Kentucky has sufficient information in deciding whether to grant clemency." *Id.* at *3. The court opined that

> a bid for clemency is not reliant upon or restricted to matters argued before the courts, *see McQueen v. Patton (In re Sapp)*, 118 F.3d 460, 465 (6th Cir. 1997); *Harbison* at 1490, and is not restricted to cases where the guilt of the petitioner is in doubt. Clemency proceedings serve as "the 'fail safe' in our criminal justice system," *Harbison* at 1490 (quoting *Herrera v. Collins*, 506 U.S. 390, 415, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)), and "the clemency power can correct injustices that the ordinary criminal process seems unable or unwilling to consider." *Dretke v. Haley*, 541 U.S. 386, 399, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004) (Kennedy, J., dissenting). In this light, the issue of Sanborn's neuropsychological state, including whether or not he has some sort of brain damage or abnormality, is indeed relevant to his clemency petition, even though Sanborn was twice judged competent to stand trial. It is reasonably necessary for Sanborn to be fully evaluated in order for the Governor to be able to make an educated decision on whether to grant clemency.

*Id.* at *4.

-13-

The facts of Foley's case are materially distinguishable from those of Sanborn's, and these dissimilarities weigh in favor of denying Foley's request.  While the *Sanborn* court gave great weight to the overarching purposes of clemency hearings in determining Sanborn's request to be "reasonably necessary," the court also factored in Sanborn's history of mental health.  It noted that "Sanborn is a 66 year-old man with a history of multiple head injuries, childhood developmental issues, and extremely low intellectual functioning," and that "[t]hese functional deficits, while insufficient to cause him to be found incompetent to stand trial, lead to questions regarding his mental state, both now and at the time he committed his crimes."  *Id.* at *2-3.

Having properly weighed the overarching purpose of clemency hearings, the Court is unpersuaded by Foley's arguments.  *See Fautenberry*, 2009 U.S. Dist. LEXIS 66764, at *4 (noting that "on the whole, the [court's finding of reasonable necessity] appear very case-specific and the analyses fact-intensive" (internal quotation marks and citation omitted)).  Foley does not have a long history of multiple head injuries, a history of childhood developmental issues, and is not of extremely low intelligence.[8]  Additionally, Foley's competency and mental health have

---

8       In reviewing the merits of Foley's § 2254 claims of ineffective assistance of trial counsel for failure to obtain a competency hearing, United States Magistrate Judge Johnson found that

> Foley was not a "marginal" individual with low intelligence, retardation, or other apparent mental deficits.  On the contrary, the record reflects that Foley was quite intelligent and had been fully involved in assisting his own defense.  He had no history of mental illness.  He was married and had been operating his own trucking company.  Counsel may make a reasonable decision that further investigation is not necessary . . . Counsel had no reason to think that investigation of childhood medical records would produce any useful information.  Foley had regularly assisted his counsel in his defense and even maintained his own file of the case.  At trial, Foley personally testified for several hours, gave his version of events, and was able to answer cross-examination questions.

[Record No. 63, pp. 25-26]  The undersigned fully agrees with this assessment.

-14-

been discussed, analyzed, and adjudged numerous times before this Court and others, and his arguments have consistently been found to be without merit. Both this Court and the Supreme Court of Kentucky have held that Foley's trial counsel was neither ineffective nor unreasonable for declining to request a competency hearing. In fact, the record is replete with multiple, detailed findings that at no point has Foley demonstrated any indicators of suffering from brain damage or mental health impairments.

Morever, in denying Foley's request for 60(b) relief, this Court unequivocally held that:

> [t]o the extent Foley has attached copies of medical records to his Objections as exhibits, these exhibits do not change the Court's opinion on this matter. Even if the Court were to accept this evidence, it is neither material nor significantly stronger than what Foley presented to the state court. Further, Foley has failed to demonstrate that the trial court at his RCr 11.42 hearing would have ruled differently on this issue but for his counsel's alleged failure to present this evidence.

[Record No. 138, pp. 21-22]

This Court specifically reviewed the evidence which Foley now presents as grounds for expert funding in the context of his Rule 60(b) motion, and found it to be unpersuasive. This Court held that:

> Foley has attached a smattering of medical records as exhibits to his Objections. He alleges these medical records were available and should have been presented at his RCr 11.42 hearing by his post-conviction counsel. The records indicate that: (1) in February 1991 he was in a car accident "in which his car flipped and he ended up in the back seat of the car;" (2) in May 1991, Foley was admitted to the emergency room after his legs went numb while attempting to push a car, and the emergency room doctor noticed an abrasion on his forehead, but, Foley left before the Doctor could fully exam him. Additionally, Foley alleges that he "reported symptoms consistent with overexposure to toxins such as the industrial degreasers he commonly used. During the time when [Foley] was exposed to industrial degreasers, TCE was commonly used in such substances. Long-term, repeated exposure to TCE can lead to damage to the central nervous system,

-15-

including fatigue, sleeplessness, poor coordination, difficulty in thinking, loss of short-term memory, and personality changes such as depression, anxiety, and irritability." Any probative value this evidence would have to substantiate a lack of mental competency is minimal, at best . . . .

[Record No. 138, p. 21 n. 8 (internal citations omitted)]

The previous findings of competency in the context of Foley's trial, RCr 11.42 hearing, Section 2254 habeas petition, and ineffective of assistance claims are not dispositive of Foley's motion for funding for a neurpyschologist. However, the Court will not ignore these findings. While there is no doubt that evidence of brain damage can act as mitigating evidence, Foley has not made a showing that a neuropsychological exam is reasonably necessary for his bid for clemency. His request for a neuropsychologist seems to be based upon the mere hope or suspicion that an expert may find something of use, and is not based on any showing of actual reasonable necessity. *See Fautenberry*, 2009 U.S. Dist. LEXIS 66764, at *5. In summary, the evidence Foley has provided as proof of alleged brain and head trauma is unpersuasive, and given the extent to which Foley's mental health has been the subject of multiple courts' rulings, this Court is confident that the Governor will have a complete picture of Foley's mental health in assessing any request for clemency.

### B.    Request for Funding for Ballistics Expert

On March 19, 2010, Foley filed a motion requesting funding for an expert in crime scene reconstruction and ballistics. [Record No. 89] This motion was denied by Magistrate Judge Wier on May 10, 2010. [Record No. 102, pp. 5-10] Foley argues that he has "repeatedly attempted to show that he acted in self-defense with regard to Rodney Vaughn and could not have shot Lynn Vaughn," but that he has been "repeatedly and improperly denied access to the expert

assistance and testimony now requested to show that the physical evidence corroborated his testimony." [*Id.*, pp. 3, 4]  He asserts that a crime scene reconstruction and ballistics expert is reasonably necessary for his clemency proceedings.  [Record No. 89, p. 3]

Magistrate Judge Wier, however, correctly found Foley's arguments to be without merit and denied Foley's request for funding.  He concluded that:

> Foley's generic proffer does not convince the Court, in its discretion, that expert assistance is reasonably necessary for Petitioner's representation . . . The Court is not persuaded that evidence insufficient to call the jury's verdict into question, for habeas purposes, would now be sufficient to impact clemency proceedings likewise centered on actual innocence . . . The Court is unwilling to find reasonable necessity where the only ground supporting the request is counsel's argument, and the state courts have already rejected the impact the same category of expert would have on assessment of Foley's guilt. The Court simply cannot find that expert assistance is reasonably necessary to pursuit of state clemency proceedings.

[Record No. 102, pp. 9-10]    Magistrate Judge Wier also noted that both the Laurel Circuit Court and the Kentucky Supreme Court[9] had previously determined that Foley had failed to demonstrate that assistance from such an expert was "reasonably necessary."  [*Id.*, p. 6-7]

Foley has renewed his motion for funding for a ballistics expert and has supplemented his motion with information which he contends was not previously available through the exercise of due diligence. [Record No. 127] Foley's arguments, however, are not new to this Court.  And as before, they remain unpersuasive.

---

9       *See Foley v. Commonwealth,* No. 2008-SC-909-TG, 2010 Ky. Unpub. LEXIS 25, at *8-9 (Ky. Mar. 18, 2010) ( "Thus, in *Foley II*, we squarely addressed the issue of expert funding and determined that the experts were not 'reasonably necessary,' and in the case of the ballistics expert, that his testimony 'could not change the Foley verdict,' . . . [t]hus, we have made a prior decision in a former appeal on the very issue raised by Foley in this proceeding . . . our conclusion was that, as a matter of law, the experts were not reasonably necessary and their testimony could not affect the trial verdict." (quoting *Foley v. Commonwealth*, 17 S.W.3d 878, 886-87 (Ky. 2000)).

-17-

Foley again argues that "to support his consistent contention that he shot Rodney Vaughn in self-defense and did not shoot Lynn Vaughn at all," he requires federal funding for a ballistics expert. [*Id.*, p. 2] Foley's current motion attaches an affidavit of findings from an alleged ballistics expert's limited review of his case materials.[10] [Record No. 127-1] The appended affidavit states that, in the opinion of the reviewing expert, (1) Rodney Vaughn was kneeling when he was shot by Foley; (2) Rodney Vaughn's injuries were consistent with him holding a gun when he was murdered; (3) at least one of the bullet wounds of Lynn Vaughn were consistent with Foley's testimony; (4) the bullet holes in the wall of the living room were consistent with Foley's version of events. [*Id.*, pp. 1-3] Foley asserts that these findings and conclusions support his contentions and that a "complete review" by this expert is "reasonably necessary" for his clemency proceedings.[11] [Record No. 127, p. 4]

In response, the respondent reiterates his previous arguments that Foley has failed to demonstrate the requisite reasonable necessity. [Record No. 130, p. 1] Further, he argues that Foley's "claim of need for funds for a 'full' report . . . rings hollow," and that the affidavit appended to Foley's current motion "looks, reads and opines like an expert report" and, therefore, "is an expert witness report." [Record No. 130, p. 3] Thus, Foley "has shown that he does not need funds from this Court to obtain an expert witness report . . . He now has one." [*Id.*]

---

10      Foley states that "[b]y raising small amounts of money from family, friends, and activists, [he] was able to obtain a limited review of some of his case materials by an expert." [Record No. 127, p. 2]

11      Foley contends that a "complete review" entails: (1) reviewing all the case materials, rather than the limited materials the expert was able to review; (2) producing diagrams of the projectiles based on witnesses' testimony and the autopsy reports; and (3) producing a computer animation of events based on witnesses' testimony and autopsy reports. [Record No. 127, p. 4]

Foley's arguments concerning his perceived necessity of a ballistics expert have repeatedly been denied and found to be without merit. The Kentucky Supreme Court has now twice denied Foley's requests for expert funding on the grounds that he has failed to show reasonable necessity. *See Foley v. Commonwealth*, 17 S.W.3d 878, 887 (2000) (overruled in part on other grounds by *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky. 2005)); *Foley v. Commonwealth*, No. 2008-SC-909-TG, 2010 Ky. Unpub. LEXIS 25 (Ky. 2010). Additionally, Magistrate Judge Wier specifically found Foley's arguments to be without merit and denied his request for funding for a ballistics expert pursuant to Section 3599. [Record No. 102] Further, in examining Foley's habeas claims of ineffective-assistance-of-counsel for counsel's alleged failure to call a qualified ballistics expert, both Magistrate Judge Johnson and this Court found Foley's arguments to be without merit. [Record Nos. 64, 69, 138]

Foley's persistent claims that "the courts have repeatedly denied him the opportunity" to prove that "he acted in self-defense with regard to Rodney Vaughn and could not have shot Lynn Vaughn," wildly misconstrue the voluminous record of this case. [Record No. 110, p. 3; Record No. 127, p. 4] During Foley's trial, Pershing Hayes testified concerning the evidence that Foley repeatedly alleges he has been denied the ability to present. The trial court, however, declined to bestow expert status upon Hayes. [*See* Record No. 63 pp. 63-66; Record No. 138, p. 22] As noted by Magistrate Judge Johnson, in review of Foley's habeas petition, Hayes "testified as to his credentials and experience in shooting firearms, and then testified fully to the information that Foley desired him to present to the jury. As Foley had been able to present the

desired testimony, his counsel made no further request for continuance and did not seek another expert." [Record No. 63, p. 64]

The Kentucky Supreme Court also directly addressed Foley's argument regarding his counsel's alleged ineffective assistance for failure to call a qualified expert and held:

> Hayes was a friend of Appellant's who had worked with firearms his entire life and knew the mechanics of several types of guns. He gave testimony on the necessary trajectory of the bullets in order to create the holes in the wall at the murder scene. His testimony implied that Appellant could not have fired at Lynn. The court did not accept Pershing Hayes as an expert because of lack of training. However, Hayes was allowed to testify, although not as an expert, and the jury was aware of his extensive experience and knowledge of firearms. *Lee v. Butler*, Ky. App., 605 S.W.2d 20 (1979), holds that expert status is determined at the discretion of the trial judge. The testimony also must be relevant to the task at hand which involved ballistics. Pershing Hayes was in no way an expert and the trial court's determination of such was proper.

*Foley*, 942 S.W.2d 876, 889 (Ky. 1996). Additionally, the Supreme Court of Kentuckylater found that "[t]he ballistic expert used by the defense was allowed to testify and was extensively cross-examined at trial. The trial court was correct in finding that there was no ineffective assistance of counsel in this respect." *Foley*, 17 S.W.3d at 886.

A review of this record demonstrates that Foley has been given the opportunity to present his claims of self-defense and actual innocence. Hayes was able to testify regarding the proof of the trajectory and irregularity of the bullet holes found at the scene of the crime — issues which Foley contends are central to his defense. The jury, along with various appellate and reviewing courts, however, found the overwhelming evidence of guilt far outweighed any far-reaching allegation of self-defense and actual innocence.

-20-

Indeed, this Court addressed the issue of Foley's counsel's failure to call a qualified ballistics expert in the context of his recent Rule 60(b) motion.[12] [Record No. 138, pp. 22-25] This Court found:

> Further, even if the Court were to assume that Foley's post-conviction counsel was ineffective regarding his alleged failure to obtain a qualified ballistics expert, Foley cannot demonstrate that his underlying ineffective-assistance-of-counsel claim is substantial, nor can he demonstrate that, had a ballistics expert testified at his RCr 11.42 hearing, the outcome would have been different. Again, although Foley has presented an affidavit of an alleged ballistic expert as an exhibit to his objection, this does not change the Court's finding that Foley's claims regarding this issue are without merit.

[Record No. 138, p. 24] In reaching this determination, this Court reviewed the affidavit of the ballistics expert which Foley now argues provides grounds for the Court to grant him funding, pursuant to Section 3599. The Court found that "this [evidence] does not constitute new or significantly stronger evidence than what Foley presented at his trial" and that Foley has failed to demonstrate that had his counsel presented this evidence at his trial, the outcome would have been any different. [*Id.*, pp. 24-25 n. 10]

Thus, as is abundantly clear by reviewing the record of this case, Foley has not been "repeatedly denied" the opportunity to present his arguments of self-defense and actual innocence. Additionally, after thorough review of the record of this case on numerous occasions, the Court concludes that Foley has failed to demonstrate the requisite "reasonable necessity" to

---

12    In his Rule 60(b) motion Foley argued that his post-conviction counsel was ineffective in advocating his claim of his trial counsel's ineffectiveness for failure to call a qualified ballistics expert. Foley argued that his post-conviction counsel failed to allege his ineffective-assistance-of-trial-counsel claim as a violation of federal law. Additionally, Foley asserted that his post-conviction counsel was ineffective because he waited until three days before his RCr 11.42 hearing to retain a ballistics expert, and because his counsel did not seek a ruling on his motion prior to the hearing. [Record No. 132, p. 17] Finally, he argued that his attorney was ineffective for failing to proffer an affidavit of regarding the proposed testimony of the expert. [Record No. 116, p. 11]

warrant federal funding for a "full" ballistic expert review of the case material. Hayes was allowed to testify concerning the trajectory and irregularity of the bullet holes found at the scene of the crime, and the record of this case contains that testimony. Additionally, Foley now has the benefit of the expert opinion which he has attached to his current motion. Given the expansive and detailed nature of the record of this case, a "full" review of a ballistics expert would only be redundant of what is already contained in the record and testified to by Hayes. Moreover, multiple courts have decidedly held that even if Foley was to provide the expert opinion of a qualified expert, this testimony would not have changed the outcome of his trial. In short, the record of this case is more than sufficient to provide the Governor with a complete and thorough basis for the purpose of deciding Foley's petition for clemency. Foley has failed to make a showing of reasonable necessity. His request for funding pursuant to Section 3599 will be denied.[13]

## IV.

The Court will grant Foley's motion to alter and amend the Court's January 30, 2013 Memorandum Opinion and Order for the limited purposes of reviewing Foley's motions for expert funding and both parties' objections to Magistrate Judge Wier's May 10, 2010 Order. For the foregoing reasons, based on a thorough review of the record of this case, Foley's motions requesting expert funding, pursuant to section 3599, will be denied. Additionally, having examined the record and conducted a *de novo* determination on the matters to which both Foley and the respondent object concerning Magistrate Judge Wier's May 10, 2010 Order, these

---

13      For the above-stated reasons, Foley's objections to Magistrate Judge Wier's order denying Foley funding for a ballistics expert pursuant to Section 3599 will be overruled, on the merits. [Record No. 110]

objections will be overruled in accordance with this Memorandum Opinion and Order. Accordingly, it is hereby

**ORDERED** as follows:

1.      Petitioner Robert C. Foley's Motion to Alter and Amend Pursuant to Fed. R. Civ. P. 59(e) [Record No. 139] is **GRANTED**.

2.      The Court's January 30, 2013 Memorandum Opinion will be **AMENDED** to incorporate consideration of the above-referenced motions.

3.      The Magistrate Judge's Order [Record No. 102] is **ADOPTED** and **INCORPORATED** by reference.

4.      Petitioner Robert C. Foley's Objections to Magistrate Judge's Denial of Expert Funding [Record No. 110] are **OVERRULED**.

5.      Respondent Objections to Magistrate's Order of May 10, 2010 [Record No. 111] are **OVERRULED**.

6.      Petitioner Robert C. Foley's Motion for Expert Funds [Record No. 89] is **DENIED.**

7.      Petitioner Robert C. Foley's Motion to Supplement/Amendment to Petitioner's Motion for Expert Funding [Record No. 127] is **DENIED**.

8.      Petitioner Robert C. Foley's Motion for Expert Funds to Retain a Neuropsychologist for Clemency [Record No. 133] is **DENIED**.

9.      This proceeding is be **DISMISSED** and **STRICKEN** from the docket.

This 12th day of March, 2013.



Signed By:

*Danny C. Reeves*

United States District Judge